I tSULLIVAN, Judge.
Marilyn Guillot filed suit for health insurance benefits against her two successive insurers, Blue Cross of Oregon and Blue Cross of Louisiana. The trial court absolved the first insurer, Blue Cross of Oregon, finding that its policy was no longer in force when Mrs. Guillot incurred substantial medical bills approximately ten months after returning to Louisiana. However, the court rendered judgment against Blue Cross of Louisiana by reforming its health conversion policy to conform with the mandated benefits of La.R.S. 22:230.2.
Blue Cross of Louisiana appeals, contending that Mrs. Guillot has no remedy under La.R.S. 22:230.2 because her conversion policy was issued before that statute’s effective date. Mrs. Guillot has neither answered the appeal nor appealed the dismissal |2of her claims against Blue Cross of Oregon. For the following reasons, we reverse the judgment of the trial court.
Facts
In 1987, Mrs. Guillot and her husband, Gordy, natives of Louisiana, moved to Oregon, where they became insured by HMO Oregon (HMOO) through Mr. Guillot’s employment. When Mr. Guillot retired in 1989, he obtained a HMO group conversion policy. This conversion policy, as well as the initial HMOO contract, required that the insured’s permanent residence be within a certain geographic area.
In the fall of 1991, the Guillots decided to return to Louisiana. Aware of the policy’s territorial restrictions and his wife’s many debilitating, pre-existing health problems, Mr. Guillot consulted HMOO about his options for maintaining coverage in Louisiana. He first spoke with Linda Rask, the group marketing liaison who had earlier assisted him with his group conversion policy. Ms. Rask informed him that his conversion benefits would terminate if he left the service area, but she referred him to Kim Wirtz, who marketed individual policies for Blue Cross of Oregon, HMOO’s parent company. Ms. Rask denied that she ever told Mr. Guillot his benefits under either the conversion plan or any individual plan that he may obtain from Ms. Wirtz would equal his original HMOO group benefits.
. Ms. Wirtz explained that Mr. Guillot would have to obtain special permission to transfer his group conversion plan to a traditional Blue Cross individual plan. Once this was obtained, he would be eligible for an inter- *93 plan transfer to Blue Cross of Louisiana. However, Ms. Wirtz testified that she had no knowledge of the level of benefits that Blue Cross of Louisiana would provide, nor did she have any application forms for a Louisiana policy. The individual Blue Cross of Oregon policy would cover the Guillots for one payment period (three months) after they moved to Louisiana, but jgthey would have to enroll in the Louisiana plan (at whatever benefits Louisiana offered) to continue coverage beyond that date.
The Guillots elected to convert their Oregon group policy to an Oregon individual policy at the level of benefits known as “Conversion J.” The individual “Conversion J” policy, effective December 1, 1991 through February 29,1992, placed the Guillots in line for a transfer to Blue Cross of Louisiana. On April 28, 1992, Mrs. Guillot submitted an application for the Louisiana policy, which was issued effective March 1,1992 to prevent any lapse in coverage. The Louisiana policy, however, provided far less benefits than the Oregon “Conversion J” policy: for a quarterly premium of $700.83, the Louisiana policy offered coverage of only $10,000.00 per calendar year, with a lifetime maximum of $20,-000.00. At the time of the Guillots’ application, this policy was the only option Blue Cross of Louisiana offered to out-of-state transferees.
Mr. Guillot testified that he first learned of the limited coverage of the Louisiana policy after his wife had been hospitalized in Alexandria for quadruple by-pass surgery in late August and early September of 1992. He testified that he had no contact with Blue Cross of Louisiana, but he insisted that Blue Cross of Oregon employees represented that all of his benefits would be transferred to Louisiana. He points to a letter from Ms. Wirtz, in which she states that the “Conversion J” policy will cover him “while we transfer your benefits to the Blue Cross and Blue Shield Plan that is headquartered in Louisiana, where you now reside.”
Mr. Guillot’s testimony was disputed by employees of Blue Cross of Oregon and Blue Cross of Louisiana. Ms. Wirtz testified that she explained to Mr. Guillot that any conversion plan would have a dramatic difference in coverage and that he should consult an insurance professional in Louisiana to look for other benefits because the conversion policy would not be adequate for his wife’s needs. She stated that she had 14no knowledge of policies in Louisiana and that she never quotes any information about out-of-state policies. She explained that in her letter she equated “transfer your benefits” as a statement of eligibility of coverage, with no reference to benefit levels.
Marie Smith, of Blue Cross of Louisiana, testified that the application that Mrs. Guillot submitted on April 28, 1992, was perforated from a brochure that explained the limitations of the Louisiana policy. She also stated that a package containing the Guillots’ subscriber cards (which they received) should' have contained a booklet explaining the Louisiana policy benefits.
In her suit, Mrs. Guillot prayed that the Blue Cross of Louisiana policy be reformed to provide benefits equal to either the HMOO policy or the “Conversion J” policy or, alternatively, that the Guillots’ coverage with Blue Cross of Oregon be reinstated. At trial, plaintiff argued the applicability of La. R.S. 22:230.2, which sets forth minimum conversion requirements in certain situations. That statute became effective August 21, 1992, after Mrs. Guillot was issued her Louisiana policy but before she incurred most of her medical expenses.
Opinion
La.R.S. 22:230.2, the basis of the trial court’s assessment of liability to Blue Cross of Louisiana, provides in part:
A. (1) A group policy or group certificate delivered or issued for delivery in this state by: (a) an insurer; (b) a nonprofit mutual association which is engaged exclusively in the furnishing of hospital services and medical or surgical benefits; (e) a health maintenance organization; (d) a self-insured plan that provides, on an expense-incurred basis, hospital, surgical, or major medical e:spense insurance; or (e) any combination thereof, shall provide that an employee or member whose insurance under the group policy has been terminated for any reason and who has been con *94 tinuously insured under the group policy and under any group policy providing similar benefits that the terminated group policy replaced, for at least three months immediately prior to termination, shall be entitled to have issued to him by the insurer a policy or certificate of health and accident insurance, hereafter referred to in this Section as a “converted policy”.
_k- • ■ ■
C. The converted policy shall be issued without evidence of insurability.
D. (1) The premium for the converted policy shall be determined in accordance with premium rates applicable to the age, class of risk, and type and amount of insurance coverage provided in the converted policy of the person to be covered. However, the premium for the converted policy may not exceed the premium charged by the Louisiana Health Insurance Association at the time of conversion, adjusted for differences between benefit levels for the converted policy and the policy offered by the Louisiana Health Insurance Association.
(2) The actual or expected experience under converted policies may be combined with the experience under group policies for the purposes of the determination of premium and loss experience by the insurer and the establishment of adequate premium rate levels for group coverage.
(3) For purposes of this Section, a conversion policy shall not be denied because a person is or may be eligible for benefits pursuant to R.S. 22:240. In the event that the Louisiana Health Insurance Association does not issue policies, or has not done so by the effective date of this Section, benefit and premium levels for conversion policies under this Section shall be based upon those proposed by the Louisiana Health Insurance Association, if any, or determined in accordance with the mechanisms established by R.S. 22:240.
E. The effective date of the converted policy shall be the day following the termination of insurance under the group policy.
F. The converted policy shall provide insurance coverage for the employee or member and the dependents of the employee or member who were covered by the group policy for at least three months prior to the date of termination of insurance. At the option of the insurer, a separate converted policy may be issued to cover any dependent.
[[Image here]]
I. An insurer under this Section shall not be required to issue a converted policy that provides benefits in excess of those provided under the preceding group policy.
J. In determining whether any pre-ex-isting condition precludes coverage for a specific benefit in the converted policy, credit shall be given for the time the person was covered under the group policy.
K. (1) Subject to any provision and condition of this Section, the employee or member shall be entitled to obtain a converted policy providing major medical coverage under a plan providing substantially ^similar benefits to those offered in R.S. 22:240(A) through (E). If the benefit levels required in R.S. 22:240(A) through (E) exceed the benefit levels provided under the prior group insurance policy, the converted policy may offer benefits which are substantially similar to those provided under the prior group policy.
[[Image here]]
L. An insurer may, at its option, also offer alternative plans for group health and accident conversion in addition to the converted policy required by this Section.
M. The conversion privilege provided in this Section shall also be available to any of the following:
[[Image here]]
(2) To the spouse of the employee or member upon termination of coverage of the spouse, if the employee or member remains insured under the group policy, by reason of ceasing to be a qualified family member under the group policy, with respect to the spouse and the children whose coverages under the group policy terminate at the same time.
[[Image here]]
N. If the benefit levels required in this Section exceed the benefit levels provided under the prior group policy, the converted *95 policy may offer benefits which are substantially similar to those provided under the prior group policy.
O. Any insurer of health and accident insurance may elect to provide group health and accident insurance coverage instead of issuing an individual converted policy.
P. A notification of the right to a converted policy shall be included in each certificate of coverage for health and accident insurance.
We first note that this statute applies only to a “group policy” that is “delivered or issued for delivery in this state." The statute then requires such a policy to provide that certain terminated employees or members shall be entitled to have issued to them a “converted policy” with certain minimum benefits. Blue Cross of Louisiana, however, never issued the Guillots a group policy. That coverage was provided by HMOO, through its initial HMO contract and later its HMO conversion policy. These policies were territorially restricted to certain counties within the state of Oregon (a |7fact acknowledged by the Guillots); therefore, they cannot be considered as “delivered or issued for delivery in this state.” Thus, regardless of the statute’s effective date, its mandatory conversion provisions are not triggered by the issuance of either of these policies.
However, Blue Cross of Oregon did issue the Guillots its “Conversion J” policy with knowledge that the Guillots would be living in Louisiana during the term of this policy. Although this policy was an “individual” policy in that it was issued through Blue Cross of Oregon’s non-group marketing division, it was apparently issued in compliance with Oregon’s group conversion benefits statute (in effect at the time). It was also issued as a “bridge” for coverage in Louisiana, in accordance with “interplan transfers” that are accepted by Blue Cross of Louisiana. We, therefore, find that a discussion of whether La.R.S. 22:230.2 can be applied to the Louisiana policy is necessary.
La.Civ.Code art. 6 provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
In Segura v. Frank, 93-1271 (La.1/14/94), 630 So.2d 714, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994), the supreme court asked the following questions in applying Article 6: (a) will application of a law or amendment have a retroactive effect; and (b) if so, is the retroactive application permissible, depending upon the classification of the law or amendment as procedural, interpretative, or substantive?
Blue Cross of Louisiana contends that application of the this statute would retroactively impair contractual obligations the parties incurred prior to the statute’s enactment. Mrs. Guillot, however, argues that her cause of action did not accrue until |8the insurer denied coverage under the conversion policy, after the statute’s effective date; therefore, there is no retroactive application in the instant case.
We agree with Blue Cross of Louisiana that application of the statute to its policy would have a retroactive effect. As the supreme court stated in Block v. Reliance Ins. Co., 433 So.2d 1040, 1044 (La. 1983) and quoted with approval in Segura, 630 So.2d at 722-23:
Where the statute in question was not in effect at the time of contracting, it cannot be retroactively applied to alter the obligations of that contract, even though the act giving rise to the obligation occurs after the effective date of the statute.
(Emphasis in Segura, 630 So.2d at 722-23.)
The eases cited by Mrs. Guillot are not controlling. Prejean v. Dixie Lloyds Ins. Co., 94-2979 (La.9/15/95), 660 So.2d 836, stands only for the proposition that LIGA’s obligations are governed by the law in effect on the date of an insurer’s insolvency. Cole v. Celotex Corp., 599 So.2d 1058 (La.1992) and Trahan v. Liberty Mutual Ins. Co., 314 So.2d 350 (La.1975) involve delictual actions, not contractual disputes.
In the absence of legislative intent regarding retroactive or prospective application of La.R.S. 22:230.2, the next inquiry is whether *96 the enactment is substantive, procedural, or interpretative. As explained in Segura, 630 So.2d at 723:
Substantive laws establish new rules, rights, and duties or change existing ones. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 817 (La.1992); Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331, 1339 (La.1978). Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Graham v. Sequoya Corp., 478 So.2d 1223, 1226 (La.1985); Terrebonne v. South Lafourche Tidal Control Levee Dist, 445 So.2d 1221, 1224 (La.1984). Interpretive laws merely establish the meaning the interpreted statute had from the time of its enactment. St. Paul Fire & Marine, 609 So.2d at 817; Ardoin, 360 So.2d at 1339.
We also agree with Blue Cross of Louisiana that this statute represents a substantive change in the law. La.R.S. 22:230.2 appears to be the first legislative expression regarding the rights of group policy holders to have issued a conversion ^policy upon termination of group coverage. The law creates a new right in favor of certain group insureds in Louisiana as well as a corresponding new duty required of group insurers. Unlike the statute considered in Manuel v. Louisiana Sheriff’s Risk Management Fund, 95-0406 (La.11/27/95), 664 So.2d 81, La.R.S. 22:230.2 specifically addresses the subject and terms of a contract. We, therefore, hold that the statute cannot be applied to alter the terms of conversion policies issued before its effective date.
Because Mrs. Guillot has not appealed the dismissal of Blue Cross of Oregon, we are precluded from addressing that carrier’s liability, either under the Oregon mandate statute, the Louisiana statute, or any theory of negligent misrepresentation and/or agency.
Decree
For the above reasons, the judgment of the trial court is reversed. Costs of this appeal are assessed to plaintiff/appellee, Marilyn Guillot.
REVERSED.
SAUNDERS, J. concurs in part, dissents in part, and assigns reasons.