# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 99-10087
_____

**FRANKLIN ENGLE; ROBERT GARBARINO,**

**Plaintiffs-Appellants,**

**versus**

**MASON A. DINEHART, III, Individually, doing business as
Financial Education Network Development, Inc.,**

**Defendant-Appellee.**

_____

### Appeal from the United States District Court
### for the Northern District of Texas
### (4:97-CV-1058-A)
_____

April 19, 2000

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

At issue is whether a Rule 12(b)(6) dismissal for failure to state a claim is proper when the complaint alleges an individual, who uses another to present an educational financial planning workshop, is liable to a workshop attendee for the presenter's post-workshop conversion of the attendee's funds, liability having been premised on negligent misrepresentation of the presenter's qualifications, negligence, vicarious liability for the presenter's criminal acts, violation of the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE §§ 17.41-17.63, and violation of the Texas

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Securities Act, TEX. REV. CIV. STAT. arts. 581-1 through 581-37.  We **AFFIRM.**

I.

The third amended complaint alleges the following.  Defendants Ft. Worth Chapter of the National Management Association (NMA) and General Dynamics Management Association jointly sponsored three-day retirement planning workshops at General Dynamics' facility.  (NMA and General Dynamics settled.)

On 31 January 1992, Defendant Successful Money Management Seminars, Inc. (SMMS), entered into a license agreement with Turner ("Financial Strategies for Successful Retirement Services License Agreement").  Turner paid SMMS $4,500 "for the right to teach and promote the investment advisory business of [his company] Annable Turner & Company at certain pre-arranged seminars under the SMMS trademark/service mark ... and use and distribute SMMS materials at these seminars".  Accordingly, he "was allowed to hold himself out as a financial planner and retirement specialist approved by SMMS".

Defendant Mason A. Dinehart III, "as SMMS' apparent agent and licensee, represented himself to be an authorized representative of the NMA".  Doing business as Financial Education Network Development (FEND), Dinehart selected Turner to be his representative for presenting the workshops.  Dinehart introduced Turner at those workshops as a "certified financial planner" or "c.f.p."  Turner was *not* a "c.f.p."  Furthermore, he was promoting his own unregistered advisory firm, Annable Turner & Co., at these workshops; Turner, individually, was *not* registered, contrary to Texas law, as a fee-

based financial planner; he had a disciplinary record with the National Association of Securities Dealers; and he had been fired by E.F. Hutton for engaging in improper financial transactions. Dinehart knew, or should have known, these facts about Turner.

Turner agreed to pay Dinehart 25% of the fees he received from each workshop. Dinehart negligently referred Turner to Franklin Engle and Robert Garbarino (Plaintiffs).

Engle attended a workshop beginning *29 September 1992.* It included a free individualized financial plan worth $500. He completed the financial history forms, and attended his free consultation with Turner.

In September 1993 (almost a year after the workshop), Engle transferred funds to Turner to purchase investment securities. Turner, however, did *not* purchase any securities with the money; instead, he converted it. *In 1994*, Engle transferred more than $100,000 in assets to Turner for him to manage. *On 24 July 1995*, Turner convinced Engle to liquidate a portion of these assets to purchase a security; but, instead of buying the security, Turner converted the liquidated portion to his own use. Finally, *in 1996*, Engle transferred an IRA to Turner; he converted it. In April 1997, Engle learned the investments he had with Turner had *no* value.

Garbarino attended a workshop at General Dynamics' facility on 29 January 1992. Turner was introduced by Dinehart as "FEND's representative"; Garbarino also received the free financial plan.

*In April and July 1992*, Garbarino cashed his United States Savings Bonds and gave the money, along with almost all of his and

his wife's other money, to Turner to manage. In *October 1993*, Garbarino transferred his 401(k) funds to Turner. *In November 1995* (more than three years after the workshop), Turner recommended that Garbarino invest in a high-yield corporate bond. Once again, instead of investing in a security, Turner converted the money Garbarino transferred. *In 1996* (four years after the workshop), Garbarino transferred more assets to Turner. Once again, Turner converted them.

The original complaint was filed in district court on 19 December 1997. Plaintiffs claim, *inter alia*, negligent misrepresentation, negligence, vicarious liability, violation of the Texas Deceptive Trade Practices Act, and violation of the Texas Securities Act. The first amended complaint was filed on 13 February 1998.

In March 1998, Plaintiffs' request to file a second amended complaint was granted without opposition. It was filed on 23 March.

On 17 April, Dinehart moved to dismiss the second amended complaint. On 9 June, pursuant to FED. R. CIV. P. 12(b)(6), the district court tentatively dismissed the complaint for failure to state a claim. The district court ruled that Plaintiffs had failed to allege: (1) facts constituting a primary violation of the Texas Securities Act, or, assuming a primary violation, aider and abettor liability; (2) a contractual relationship supported by consideration between Plaintiffs and Defendants; (3) a duty of care on the part of Defendants to Plaintiffs; and (4) facts that would classify Plaintiffs as consumers, that there was a false, misleading, or

deceptive trade practice, and, that, if there was a deceptive trade practice, it was the cause of Plaintiffs' damages.

The court gave Plaintiffs until 9 July to file a third amended complaint, reminding them of their obligations under Rule 11.  On 22 June, instead of filing a third amended complaint, Plaintiffs moved to transfer venue.  The motion was denied four days later.

On 9 July, the third amended complaint was filed.  Pursuant to a comprehensive opinion, it was dismissed in January 1999 for failure to state a claim.  *Engle v. Dinehart*, No. 4:97-CV-1058-A (N.D. Tex. 7 Jan. 1999).

Defendant SMMS settled just before oral argument here. Dinehart is the only remaining Defendant.

## II.

In addition to contesting the dismissal of their third amended complaint, Plaintiffs challenge rulings on venue and discovery.

### A.

#### 1.

The court refused to transfer venue under 28 U.S.C. § 1404(a). Such denial is reviewed for abuse of discretion.  *E.g., Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989).

This action concerns Turner and educational workshops.  An action in another forum concerns Turner and several securities accounts.  The actions do *not* involve substantially similar issues. There was *no* abuse of discretion.

#### 2.

- 5 -

Discovery was stayed, pending ruling on the motion to dismiss. Appellants provide *no* authority in support of this issue.

FED. R. APP. P. 28(a)(9)(A) requires their brief to include argument, which must include their "contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies". Of course, issues *not* properly briefed are deemed abandoned. *E.g., **United States v. Guerrero***, 169 F.3d 933, 943 (5th Cir. 1999).

In any event, the stay was proper, in the light of Plaintiffs' frequent amendments to the complaint and the pending 12(b)(6) motion.

### B.

We review *de novo* dismissal of a complaint, pursuant to Rule 12(b)(6), for failure to state a claim. *E.g.*, **Blackburn v. City of Marshall**, 42 F.3d 925, 931 (5th Cir. 1995). A complaint survives scrutiny "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". **Conley v. Gibson**, 355 U.S. 41, 45-46 (1957). The question is whether, "in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief". **Lowrey v. Texas A&M Univ. Sys.**, 117 F.3d 242, 247 (5th Cir. 1997) (internal quotation marks and citation omitted).

Dismissal was proper, essentially for the reasons stated in the district court's opinion. A few of the numerous reasons for our so holding follow.

1.

The third amended complaint fails to state a claim for negligent misrepresentation, because there is *no* allegation Dinehart gave any advice to Plaintiffs with respect to investment purchases from Turner. Dinehart's comments about Turner's qualifications were *not* a recommendation to make investments with him. Nor were Plaintiffs justified in relying on them in trying to purchase investments. In addition, Turner's conversion, the cause of the losses, is far too attenuated from Dinehart's representing Turner as a "certified financial planner".

2.

For the negligence claim, the third amended complaint points to *no* duty on the part of Dinehart to Plaintiffs. Dinehart did *not* have a duty to investigate Turner and disclose the results of such investigation to Plaintiffs. *See* ***Golden Spread Council, Inc. v. Akins***, 926 S.W.2d 287, 291 (Tex. 1996). Plaintiffs allege Turner's criminal acts were foreseeable to Dinehart. Foreseeability alone, however, is *not* sufficient to justify the imposition of a duty. ***Id***. at 290-91.

3.

For the vicarious liability claim, Turner was *not* Dinehart's agent for the purchase of investments, the cause of the losses; and, for the purchase of securities, Plaintiffs did *not* justifiably rely on any statement or conduct by Dinehart representing that Turner was his agent. Furthermore, the application to attend the workshop, attached to the third amended complaint as an exhibit, states FEND

- 7 -

was "*a purely educational organization where only information is provided*".  (Emphasis in original.)

4.

Liability under the Texas Deceptive Trade Practices Act (DTPA), is limited to those committing a deceptive trade practice or act *in connection with* a consumer transaction in goods or services.  *E.g.*, **Amstadt v. United States Brass Corp.**, 919 S.W.2d 644, 650 (Tex. 1996).  The complaint does *not* allege a consumer transaction between Dinehart and Plaintiffs.

5.

For the Texas Securities Act, the third amended complaint does *not* allege Turner sold Plaintiffs securities.  Instead, without purchasing securities, he converted money they entrusted to him.

Assuming a securities transaction between Turner and Plaintiffs, Dinehart *cannot* be liable as an aider and abettor unless he was aware of the violation and recklessly disregarded it.  *E.g.,* **Insurance Co. of N. Am. v. Morris**, 981 S.W.2d 667, 675 (Tex. 1998).  There is *no* allegation of any knowledge by Dinehart of any security transaction between Turner and Plaintiffs.

III.

For the foregoing reasons, the dismissal is

**AFFIRMED.**

DENNIS, Circuit Judge, concurring in part and dissenting in part:

The plaintiffs-appellants, Franklin Engle and Robert Garbarino, appeal from the district court's judgment, which dismissed their complaint, under FED. R. CIV. P. 12(b)(6), for failure of the pleading to state a claim upon which relief can be granted. In my opinion, the complaint stated claims against defendant-appellee, Mason Dinehart, doing business as Financial Education Network Development, Inc., based on the Texas Deceptive Trade Practices Act and the Texas common law of negligence and negligent misrepresentation, but failed to state a claim under the Texas Securities Act. Accordingly, I respectfully dissent from the majority's affirmance of the district court's judgment, except for its dismissal of the Texas Securities Act claim.

## I. BACKGROUND FACTS ALLEGED IN THE COMPLAINT

The plaintiffs' petition alleges that: Dinehart, doing business as Financial Education Network Development, Inc.("FEND"), and as the apparent agent and licensee of Successful Money Management Seminars, Inc. ("SMMS"), represented to plaintiffs that he was an authorized representative of the National Management Association ("NMA") and that he had contacts with virtually all of NMA's chapters at major corporations in the United States.[2] Through his network of financial planners and consultants, Dinehart, doing business as FEND, was in the business of arranging for financial advisers to conduct workshops for groups of corporate employees seeking expert

___

[2]This court granted the parties' joint motion to dismiss the appeal without prejudice as to appellee Successful Money Management Seminars, Inc. on October 28, 1999.

knowledge, information and advice about financial planning and investment of their 401(k) and other retirement funds. Dinehart had the exclusive right to use the SMMS materials at NMA chapters across the country. SMMS prohibited other licensees from competing with Dinehart for the NMA account.

In 1992, Dinehart selected Roger E. Turner to be his and FEND's representative in the presentation of SMMS workshops to NMA chapters in the Dallas-Ft. Worth area, including the NMA chapter at General Dynamics Corporation. Dinehart introduced Turner at the workshops that plaintiffs attended and represented to them that Turner was a "certified financial planner," or "c.f.p."

In truth, however, as Dinehart knew or should have known, Turner had never been certified by the Certified Financial Planner Board of Standards, Inc. to use the federally registered trademark "c.f.p." or "certified financial planner," and he was not licensed

to provide fee based advisory services in Texas; Turner had a disciplinary record with the NASD for engaging in private transactions and selling unregistered financial products without the knowledge of his broker-dealer; Turner had been fired by E.F. Hutton in 1986 for such conduct; Turner had misappropriated almost a million dollars from victims through the sale of "Towers Financial" collateralized notes; and Turner's investment advisory firm, Annable Turner and Company, was not registered to provide investment advice in Texas.

Dinehart concealed from or did not disclose to plaintiffs that, prior to the 1992-1993 workshops, Dinehart and Turner had agreed that Turner would pay Dinehart approximately 25% of the fees Turner collected from the workshop participants; and that Dinehart and Turner carried out this plan and agreement while Turner conducted regular workshops in 1992-1993 at General Dynamics Corporation and Lockheed Corporation under the trademark "Financial Strategies for Successful Retirement Seminar."

In 1992, Frank Engle, almost sixty years old, and Robert Garbarino, aged fifty years, were veteran engineers employed by General Dynamics.  They worked at a plant which Lockheed planned to acquire from General Dynamics.  The sale was expected to  trigger lump sum distributions of retirement funds to many General Dynamics employees.  Dinehart and FEND organized and presented comprehensive retirement planning workshops at the General Dynamics plant to assist employees in financial planning and investment of retirement funds.  Engle and Garbarino participated in workshops conducted at their plant by Turner, acting as Dinehart/FEND's representative.

As part of the workshops each participant received an individualized financial plan and consultation, valued by the organizers at $500, designed to prepare them for the anticipated sale of the plant to Lockeed and the distribution of retirement funds by General Dynamics.  At the close of their workshops, Turner had each plaintiff fill out forms disclosing his confidential personal financial data and history.  The forms were drafted and disseminated by SMMS, bearing the SMMS logo and trademark.  The SMMS

materials represented to the plaintiffs that the information would be treated as confidential and analyzed by a SMMS financial planner. SMMS represented that each plaintiff could receive a personalized retirement plan including recommendations for specific investments and other financial planning tools to help them meet their families' needs and achieve their goals. In fact, however, Turner used the SMMS materials and his position as the Dinehart/FEND representative to gain the confidence of the plaintiffs and their authorization to advise, recommend and execute the investment of their IRA and other retirement assets. During that process, however, Turner converted the plaintiffs' assets to his own use and benefit. From 1993 to 1996, plaintiffs lost over $200,000 of their retirement funds through the fraudulent conduct of Roger E. Turner. The plaintiffs relied to their detriment on the false information provided them by Dinehart/FEND to the effect that Turner was a qualified and reliable retirement specialist, certified financial planner or accredited investment adviser. On the basis of these and other representations by Dinehart/FEND, the plaintiffs entrusted their retirement funds to Turner for investment. Dinehart/FEND knew or should have known that Turner was corrupt, had a disciplinary record, did not have valid credentials as a retirement or financial planner, and was likely to commit intentional misconduct and abuses of trust to the plaintiffs' detriment. But for the false information about Turner provided by Dinehart/FEND, the plaintiffs would not have relied on Turner's advice or guidance and would not have entrusted him with the investment of their IRA and other retirement funds.

Turner's registration as an investment adviser in Texas expired on December 31, 1991 and was not renewed. The Annable Turner and Company's registration with the Texas Securities Board as an investment adviser lapsed before Turner began the workshops. Turner violated the Texas Securities Act, TEX. REV. CIV. STAT. art. 581-19(C)(6), by conducting a fee-based investment advisory business in Texas through which he recommended and executed the purchase of unregistered securities on behalf of the plaintiffs. Turner also violated the Texas Securities Act, TEX. REV. CIV. STAT. art. 581-33(a)(1) and (2) by selling unregistered securities and securities by means of untrue statements of material facts and fraudulent omissions. On May 12, 1998, Turner was convicted of federal securities fraud under 15 U.S.C. §§ 77q(a) and 77x.

## II.  ANALYSIS

### A. Negligent Misrepresentation

The Texas Supreme Court, in *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991), adopted the common law cause of action for negligent misrepresentation that results in pecuniary loss as set out in the RESTATEMENT (SECOND) OF TORTS § 552 (1977). *See also McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999); *First Nat'l Bank of Durant v. Trans Terra Corp. Int.*, 142 F.3d 802, 808 (5th Cir. 1998). Section 552(1) of the Restatement provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he

fails to exercise reasonable care or competence in obtaining or communicating the information.

Although the Texas Supreme Court, in *Sloane* and *McCamish*, did not quote or paraphrase section 552(2) & (3), as it did section 552(1), the opinions indicate an intention to adopt section 552 as a whole. This court has interpreted the decisions accordingly. *See First National,* 142 F.3d at 808-09; *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.,* 81 F.3d 606, 612-14 (5th Cir. 1996). Because Engle and Garbarino do not allege that Dinehart and FEND were under a public duty to give the information in question, the liability in the present case is limited by section 552(2) which, in pertinent part, provides:

> [T]he liability stated in Subsection (1) is limited to loss suffered
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the informartion or knows that the recipient intends to supply it; and
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiffs, with every doubt resolved in their behalf, I believe that their complaint states a cause of action against the defendants under the Texas common law of negligent misrepresentation causing pecuniary loss as described by the RESTATEMENT (SECOND) OF TORTS § 552. Dinehart, doing business as FEND, was acting in the course of his business, profession or employment when he planned and organized the retirement investment workshops, selected Turner as his representative and as the expert

to conduct them, and solicited the plaintiffs' participation and reliance on Turner for financial advice and instruction. Dinehart also had a pecuniary interest in the fees charged the workshop participants and in the quality and reputation of the workshops he organized and promoted nationwide in the scope and course of his business. Dinehart, personally and doing business as FEND, supplied false information directly to the plaintiffs for the guidance of the plaintiffs in their business transactions. He incorrectly represented to them that Turner was a reputable, qualified, and certified expert upon whom they could rely for sound information and beneficial advice in their financial, investment and retirement planning transactions. The plaintiffs, inexperienced and unsophisticated in financial planning and investments, justifiably relied upon the information supplied them about Turner by Dinehart, who had bolstered his own credibility by advertising his experience and relations with the NMA chapters at major corporations, SMMS, and his own organization, FEND. The plaintiffs suffered losses of their assets due to their justifiable reliance upon the false information about Turner supplied them by Dinehart/FEND, as well as Dinehart/FEND's endorsement of Turner as their representative, which caused the plaintiffs to justifiably rely on Turner's fraudulent advice, information and services. Dinehart is liable to the plaintiffs for these losses because he did not exercise the reasonable care and competence, professed by and expected of a person engaged in his business or profession, in engaging Turner to conduct the workshops without an adequate investigation of his

reliability, and in obtaining and communicating to the plaintiffs the false information and impressions concerning the trustworthiness of Turner. Engle and Garbarino were among a limited group of persons for whose benefit and guidance Dinehart and FEND intended to supply the false information about Turner. The plaintiffs suffered losses through reliance upon the false information in transactions Dinehart intended the information to influence, viz., the plaintiffs' participation for a fee in the workshops under Turner's tutelage; the plaintiffs' reliance on Turner for instruction, advice and information regarding their financial, investment, and retirement planning and transactions; the plaintiffs' disclosures of personal financial data to Turner and receipt from him of individualized financial plans and consultations; and in substantially similar transactions.

The damages recoverable for a negligent representation, however, are limited to those necessary to compensate Engle and Garbarino for the pecuniary losses to them of which the misrepresentations were a legal cause. In *Sloane*, 825 S.W.2d at 443, the Texas Supreme Court declined to extend damages beyond those limits provided in Restatement section 552B. The court adopted the pertinent part of that section in its opinion, as follows:

> The Restatement provides damages for this tort as follows:
> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is legal cause, including
> (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
> (b) pecuniary loss suffered otherwise as a consequence of

- 16 -

the plaintiff's reliance upon the misrepresentation.
(2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

*Id.* at 442. The court pointed out that "[t]he Restatement advances several policy reasons for limiting damages, including a lower degree of fault indicated by a less culpable mental state and the need to keep liability proportional to risk." *Id.* at 442-43 (citing RESTATEMENT (SECOND) OF TORTS § 552, comment a (1977)). Accordingly, the court rejected the Sloanes' argument that they should be allowed damages for mental anguish because Restatement 552B "limits damages to pecuniary loss alone." *Sloane,* 825 S.W.2d at 442.

Consequently, I conclude that Engle and Garbarino have stated a claim against Dinehart and FEND for which relief may be granted based upon an action for negligent misrepresentation under the common law of Texas, by virtue of the Texas Supreme Court's adoption of the provisions and limitations of sections 552 and 552B of the RESTATEMENT (SECOND) OF TORTS.

### B. Negligence

In their third amended complaint, the plaintiffs made the following allegations with regard to the defendant's negligence:

[Dinehart and FEND] knew or should have known the following about Turner when they selected him to present comprehensive retirement planning workshops to retiring employees at General Dynamics:

1) Mr. Turner had a disciplinary record with the NASD for securities offenses;
2) Mr. Turner was not licensed or registered to provide investment advice in Texas in 1992;
3) Mr. Turner and/or his businesses had tax liens and other financial difficulties which would affect the advice given to General Dynamics employees; and

4) Mr. Turner had numerous outside business interests which created a dangerous conflict of interest in advising retiring employees as to investment alternatives.

Defendants[] owed Plaintiffs a duty to exercise reasonable care in selecting and employing financial planners and advisers appearing before a targeted audience of General Dynamics employees receiving lump sum distributions of retirement funds. It was reasonably foreseeable to [the Defendants] that Plaintiffs would base investment decisions about their retirement funds on the presentations they received at the workshops. Defendants knew or should have known that Plaintiffs would utilize the workshop (which included a confidential consultation with Turner purportedly worth $500.00) to purchase services from Turner.

The complaint states a valid claim for relief under the Texas common law of negligence. The pleadings, taken in the light most favorable to the plaintiffs, set forth several sets of facts that would support their negligence claim.

Under the doctrine of respondeat superior, a master is subject to liability for the torts of his servants committed while acting within the scope of their employment. *See Baptist Memorial Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)(citing *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995); RESTATEMENT (SECOND) OF AGENCY § 219 (1958));[3] *Durand v. Moore*, 879 S.W.2d 196, 199

---

[3]   RESTATEMENT (SECOND) OF AGENCY § 219, in pertinent part, provides:
  (1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.
  (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
                         * * *
  (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

(Tex.App.-Houston [14th Dist.] 1994, no writ); *McMurrey Corp. v. Yawn*, 143 S.W.2d 664, 666 (Tex.Ct.Civ.App.-Texarkana 1940, writ refused); *Cameron Compress Co. v. Kubecka*, 283 S.W. 285, 286 (Tex.Ct.Civ.App.-Austin 1926, no writ). The most frequently proffered justification for imposing such liability is that the master has the control or right to control the physical conduct of the servant in the performance of the services or work. *See Baptist Memorial,* 969 S.W.2d at 947 (citing *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 585-86 (Tex. 1964); RESTATEMENT (SECOND) OF AGENCY § 220, cmt. d). But because an independent contractor usually has sole control over the means and methods of the work to be accomplished, the general rule is that an employer or principal who hires an independent contractor is not vicariously liable for the contractor's tort or negligence. *See id.* (citing *Enserch Corp. v. Parker*, 794 S.W.2d 2, 6 (Tex. 1990); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985)). Nevertheless, an employer or principal may act so as to be subjected to liability because of the conduct of a person who is not its agent, or who, although an agent, has acted outside the scope of his or her authority. *See id.* at 947. Under the doctrine of ostensible agency, the employer or principal may be held liable under circumstances in which his own conduct should equitably prevent him from denying the existence of an agency.[4] *See id.* at 947-48 (citing, *e.g.*, *Marble Falls Hous.*

---

[4] As a practical matter, there is no distinction between ostensible agency, apparent agency, apparent authority, and agency by estoppel. *See Baptist Memorial*, 969 S.W.2d at 947, n.2 (citing authorities).

*Auth. v. McKinley*, 474 S.W.2d 292, 294 (Tex.Civ.App.-Austin 1971, writ ref'd n.r.e.)); *McWhorter v. Sheller*, 993 S.W.2d 781, 786 (Tex.App.-Houston[14th Dist.] 1999)(persons who defrauded plaintiff had apparent authority as defendant's agents)(citing *Baptist Memorial,* 969 S.W.2d at 949; *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981)); *cf. Lane v. Security Title & Trust Co.,* 382 S.W.2d 326, 330 (Tex.App.-Dallas 1964, no writ)(Insurer held liable for its local agent's misrepresentations) (citing RESTATEMENT OF LAW OF AGENCY, §§ 257, 258). "Ostensible agency in Texas is based on the notion of estoppel, that is, a representation by the principal causing justifiable reliance and resulting harm." *Baptist Memorial,* 969 S.W.2d at 948 (citing *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984); RESTATEMENT (SECOND) OF AGENCY § 267; KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 105, at 733-34 (5th ed.1984) [hereinafter PROSSER]).

Texas has adopted RESTATEMENT (SECOND) OF AGENCY § 267 (1958), under which a person "asserting ostensible agency must demonstrate that (1) the principal, by its conduct, (2) caused him or her to reasonably believe that the putative agent was an employee or agent of the principal, and (3) that he or she justifiably relied on the appearance of agency." *Baptist Memorial,* 969 S.W.2d. at 948; *see also Ames*, 672 S.W.2d at 450. The Texas Supreme Court, in *Baptist Memorial Hospital*, repeated its earlier explanation of ostensible agency:

> Apparent authority in Texas is based on estoppel. It may arise either from a principal knowingly permitting an agent to hold herself out as having authority or by a principal's actions which lack such ordinary care as to

> clothe an agent with the indicia of authority, thus
> leading a reasonably prudent person to believe that the
> agent has the authority she purports to exercise....
> A prerequisite to a proper finding of apparent authority
> is evidence of conduct by the principal relied upon by
> the party asserting the estoppel defense which would lead
> a reasonably prudent person to believe an agent had
> authority to so act.

*Baptist Memorial,* 969 S.W.2d at 948 (quoting *Ames*, 672 S.W.2d 447, 450 (Tex. 1984)).

The plaintiffs' complaint alleges facts from which, in the light most favorable to them, it reasonably may be found or inferred that Dinehart, doing business as FEND, by his own communications directly to the plaintiffs and the other workshop participants, proclaimed Turner, and continuously held him out to be, the agent and representative of FEND and himself, caused the plaintiffs to reasonably believe that Turner was his agent and representative, and that the plaintiffs justifiably relied on the appearance of agency. Consequently, the plaintiffs alleged facts stating a claim upon which relief may be granted on the ground that Dinehart, by his conduct, made Turner his ostensible agent in all matters pertaining to the workshops, and, in the process, subjected himself to liability for Turner's alleged torts against the plaintiffs.

Further, quite apart from any question of vicarious liability, the employer may be held liable for his own negligence in certain situations relevant to the present case. *See generally* PROSSER, § 71 at 510. Where there is a foreseeable risk of harm to others unless precautions are taken, it is the employer's duty to exercise reasonable care to select a competent, experienced, and careful contractor, and to provide for such precautions as reasonably appear

- 21 -

to be called for. *See Ross,* 796 S.W.2d at 216; *Wasson v. Stracener*, 786 S.W.2d 414, 422 (Tex.App.–Texarkana 1990, writ denied); *King v. Associates Commercial Corp.*, 744 S.W.2d 209, 213 (Tex.App.–Texarkana 1987, writ denied) (citing *Jones v. Southwestern Newspapers Corp.*, 694 S.W.2d 455, 458 (Tex.App.-Amarillo 1985, no writ); *Texas American Bank v. Bogess*, 673 S.W.2d 398, 400 (Tex.App.–Fort Worth 1984, dism. agr); *Moore v. Roberts*, 93 S.W.2d 236, 238-39 (Tex.Civ.App.–Texarkana 1936, writ ref'd); *Simmonton v. Perry*, 62 S.W. 1090 (Tex.Civ.App. 1901, no writ)); *see also Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex.Civ.App. 1979, refused n.r.e.); *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 739-40 (Tex. 1999)(Hecht, J.,dissenting); PROSSER, § 33 at 203.

Also, under another closely related Texas tort law theory, a person's act or omission may be negligent if he realizes or should realize that it involves an unreasonable risk of harm to another through the intentional tort or crime of a third person. Accordingly, the Texas Supreme Court, in *Golden Spread Council, Inc. v. Akins,* 926 S.W.2d 287, 290-91 (Tex. 1996), held that a local Boy Scouts council's affirmative act of recommending a person as a potential scoutmaster to a church sponsor of a scout troop created a duty on the part of the council to use reasonable care in light of the information the council had received about that person's alleged prior molestation of boys while he was an assistant scoutmaster in a different troop. The court stated that the local council's "duty is best expressed in comment e to Section 302B of the RESTATEMENT (SECOND) OF TORTS, which recognizes that there may be

liability '[w]here the actor has brought into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct.'"  *Id.* at 291 (quoting RESTATEMENT (SECOND) OF TORTS § 302B, cmt. e, par. D).  Similarly, the court, in *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 550 (Tex. 1985), in reversing the trial court's summary judgment dismissing plaintiff's claim, held that a genuine issue of material fact existed as to whether an apartment building owner breached his duty under a municipal ordinance to securely close the vacant portions of his structure against unauthorized entry, resulting in the rape of a 10 year old girl in an empty apartment by an offender who abducted and brought the victim to the apartment building.  With respect to the issue of proximate cause, the court concluded that, although usually the criminal conduct of a third party is a superseding cause relieving a negligent actor from liability, his negligence will not be excused where the third person's criminal conduct is a foreseeable result of his negligence.  *Id.* at 549-50 (citing *Castillo v. Sears Roebuck & Co.*, 663 S.W.2d 60 (Tex.App.–San Antonio 1983, writ ref'd n.r.e.); *Walkoviak v. Hilton Hotel Corp.*, 580 S.W.2d 623 (Tex.Civ.App.–Houston [14th Dist.] 1979, writ ref'd n.r.e.)).  In support of the holding, the court quoted RESTATEMENT (SECOND) OF TORTS § 448 (1965), which, in pertinent part, provides: "The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another...unless the actor

at the time of his negligent conduct [creating a situation making another vulnerable to such tort or crime] realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."[5]

Moreover, the court in *Nixon* pointed out that evidence of a previous rape in the apartment building is not a prerequisite to recovery: "All that is required is 'that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.'" *Id.* at 551 (quoting *Carey v. Pure Distributing Corp.*, 124 S.W.2d 847, 849 (Tex. 1939)). Texas courts have also followed the principle underlying RESTATEMENT (SECOND) OF TORTS § 499: "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." *See Hale v. Burgess*, 478 S.W.2d 856, 858 (Tex.Civ.App.-Waco 1972, no writ); *Texas-N.M. & Okl. Coaches v. Williams*, 191 S.W.2d 66, 71 (Tex.Civ.App.-El Paso 1945, writ ref. w.m); *Reeves v. Tittle*, 129 S.W.2d 364, 367 (Tex.Civ.App.-

---

[5]*See also* RESTATEMENT (SECOND) OF TORTS § 448, cmt. c ("This is true although the likelihood that such a crime would be committed might not be of itself enough to make the actor's conduct negligent, and the negligent character of the act arises from the fact that it involves other risks which of themselves are enough to make it unreasonable, or from such risks together with the possibility of crime.").

Eastland 1939, writ refused); *Jesse French Piano & Organ Co. v. Phelps*, 105 S.W. 225 (Tex.Civ.App. 1907, no writ).[6]

The Texas courts have applied the principles underlying the foregoing cases and RESTATEMENT (SECOND) OF TORTS §§ 302B and 448 to allow recovery by plaintiffs for negligently inflicted harm or loss of personal property, including money, through the intentional torts or crimes of third persons. *See Hoenig v. Texas Commerce Bank, N.A.*, 939 S.W.2d 656, 660 (Tex.Civ.App.-San Antonio 1996, no writ)(negligently inflicted loss of rents upon trust through conversion by third person); *Byrd v. Woodruff*, 891 S.W.2d 689, 701-02 (Tex.Civ.App.--Dallas 1994, writ denied, order withdrawn; dism. agr.)(attorney negligently caused loss to client through conversion by third persons); *Gilstrap v. Beakley*, 636 S.W.2d 736, 741 (Tex.Civ.App.-Corpus Christi 1982, no writ)(negligently inflicted loss of ownership of oil rig through fraud of third person); *cf. Jesse French Piano*, 105 S.W. 225 at 227 (negligent cause of loss of personal property through theft by thrid person). Similarly, in the present case, Engle and Garbarino seek to recover damages from Dinehart and FEND for the negligently inflicted harm they suffered through the fraud of Turner and the loss of their personal property, viz., their retirement funds and securities. *See, e.g.,* RESTATEMENT

---

[6]The RESTATEMENT (SECOND) OF TORTS cites *Jesse French Piano* in support of the last two sentences of comment b accompanying section 449: "The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity."

(SECOND) OF TORTS § 927 (Conversion or Destruction of a Thing or of a Legally Protected Interest In It); RESTATEMENT (SECOND) OF TORTS § 927, illus. 4, 5 (recovery of damages for the embezzlement of stock entrusted to a broker).[7]

The plaintiffs Engle and Garbarino have alleged facts under which Dinehart and FEND may be held liable, not only vicariously for the torts of Turner as their ostensible agent, but also for their own negligence in exposing the plaintiffs to the intentional torts and crimes of Turner. The complaint alleges that Turner, under the guise of a helpful financial planner and workshop counselor, gained access to their personal financial information, induced them to entrust him with control of their retirement assets for the

---

[7] The present case is not one in which a plaintiff is seeking to recover for negligently inflicted, purely economic loss, without harm to his person or legally protected property interest. The traditional rule is that a plaintiff cannot recover for pure economic loss in such cases. *See Rodriquez v. Carson*, 519 S.W.2d 214, 217 (Tex.App.–Amarillo 1979, ref. n.r.e.) (truck driver could not recover loss of salary and commissions due to defendant's negligent damage to truck owned by driver's employer); DAN B. DOBBS, LAW OF REMEDIES § 6.6(2), at 142, n.55 (2d ed. 1993) (citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927); *State of Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), *cert. denied*, 477 U.S. 903 (1986); *General Public Utilities v. Glass Kitchens of Lancaster, Inc.*, 374 Pa.Super. 203 (1988); *Hale v. Groce*, 744 P.2d 1289 (1987)); *see also* RESTATEMENT (SECOND) OF TORTS § 766C (Negligent Interference with Contract or Prospective Contractual Relation)(Comment a:"[]Thus far there has been no general recognition of any liability for a negligent interference...with the plaintiff's acquisition of prospective contractual relations[.]"); William Powers, Jr. and Margaret Niver, *Negligence, Breach of Contract, and the "Economic Loss" Rule*, 23 TEX. TECH L. REV. 477, 517 (1992). On the contrary, Dinehart and Garbarino are seeking recovery for the harm and loss of their legally vested protected property rights.

ostensible purpose of financial planning and reinvestment; that Turner fraudulently converted their funds to his own use and thereby caused them to suffer the harm of the total loss of their personal property, that is, their retirement funds and assets; that they relied on Dinehart's false representations that Turner was a certified, competent, experienced and reliable financial and retirement investment planner; that, in fact, Turner had little more than a high school education, had been discharged by a national stock broker for financial misconduct, had been disciplined for such misconduct by a national securities exchange, had never been certified as a financial planner, and had lost his registration and license as a securities dealer; that Dinehart, as a prudent and reasonable organizer of retirement planning and investment workshops, should have discovered these facts by conducting a routine pre-employment investigation of Turner's qualifications and experience as an investment, financial, and retirement counselor; that Dinehart negligently employed Turner, whom he knew or should have known was neither competent nor trustworthy, and negligently exposed the plaintiffs to an unreasonable risk of harm by the loss of their assets through the fraud, misconduct and incompetence of Turner; that Dinehart's false misrepresentations, negligent hiring, affirmative actions in promoting the workshops and vouching for Turner's professional qualifications, and negligent exposure of the plaintiffs to the risk of intentional tortious and criminal conduct by Turner, caused them to suffer the loss of their property; that they justifiably relied on Dinehart and Turner to their detriment

because, in the absence of Dinehart's negligent acts and omissions, the plaintiffs would not have entrusted Turner with their retirement assets.

### C. Texas Deceptive Trade Practices Act

To recover under the Texas Deceptive Trade Practices Act (DTPA), a plaintiff must establish (1) that he was a consumer; (2) that the defendant engaged in false, misleading, or deceptive acts; (3) that he relied on the false, misleading, or deceptive practices to his detriment; and (4) that the defendant's conduct was a producing cause of his damage. *See* TEX. BUS. & COM. CODE ANN. §17.50(a) (West 1987); *Doe v. Boys Clubs of Greater Dallas, Inc.* 907 S.W.2d 472, 478 (Tex. 1995); *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex. 1985). A producing cause is "an efficient, exciting or contributing cause, which in a natural sequence, produced injuries or damages." *Rourke v. Garza*, 530 S.W.2d 794, 801 (Tex. 1975). To qualify as a consumer, a plaintiff must have sought or acquired goods or services by purchase or lease; and the goods or services sought, purchased, or leased must form the basis of the complaint. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981); TEX. BUS. & COM. CODE §§ 17.45(4) and 17.50(a). Furthermore, the Texas Supreme Court has clearly established that the DTPA definition of "consumer" is not limited to the actual provider of the goods or services at issue:

> We find no indication in the definition of consumer in section 17.45(4), or any other provision of the Act, that the legislature intended to restrict its application only to deceptive trade practices committed by persons who

- 28 -

furnish the goods or services on which the complaint is based. Nor do we find any indication that the legislature intended to restrict its application by any other similar privity requirement... The Act is designed to protect consumers from any deceptive trade practice made in connection with the purchase or lease of any goods or services... We, therefore, hold that a person need not seek or acquire goods or services furnished by the defendant to be a consumer as defined in the DTPA.

*Cameron*, 618 S.W.2d at 540-41; *see also Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 649-50 (Tex. 1996) (reaffirming *Cameron* while finding that the DTPA does not "reach upstream manufacturers and suppliers when their misrepresentations are not communicated to the consumer." *Id.* at 649.).

Engle and Garbarino allege that they acquired or sought to purchase the services of a retirement planning specialist and incorporate by reference all of the other facts asserted in the complaint. Thus, they allege that Dinehart/FEND committed false, misleading or deceptive acts in violation of the DTPA which constituted a producing cause of the plaintiffs' loss of their retirement funds, including the following:

(a) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of Turner as a financial planner, adviser and retirement specialist by making the representations set forth in paragraphs 17-22, 24-29, 45-45, and 58 above, without making a reasonable investigation of Turner's financial history and background, qualifications, licenses, and registrations;

(b) causing confusion or misunderstanding as to Turner's affiliation, connection or association with Dinehart, FEND and SMMS as a retirement specialist and SMMS financial planner, and his certification and/or accreditation as a financial planner and adviser authorized to do business in Texas by committing the conduct set forth in paragraphs 17-29, 40-45, 58 above

and by passing off the services of Roger Turner as being those of SMMS and FEND;

(c) expressly and implicitly representing that Turner's qualifications, skill, and background were approved and suitable for employees seeking advice and rudent investment of retirement funds;

(d) failing to disclose to Plaintiffs the financial relationships between the Defendants; and

(e) representing to Plaintiffs that Turner's services were specially accredited without having conducted any independent investigation of his qualifications, background, and credentials and failing to disclose to Plaintiffs that Defendants had conducted no independent review of Turner's qualifications, background and credentials.

The plaintiffs aver that Dinehart/FEND's foregoing conduct was the producing cause of their loss or harm because, but for such conduct, plaintiffs would not have entrusted their IRA and other retirement funds to Turner's custody and control.

Accepting the facts alleged as true, and construing them in the light most favorable to the plaintiffs, I conclude that Engle and Garbarino have stated a claim satisfying all of the DTPA requirements. The plaintiffs aver that they purchased and acquired from Dinehart/FEND and Turner for their immediate use what they believed were the services of an expert planning specialist within the context of a retirement workshop program supported by a nationally known organization with professionally crafted materials and methodology and specifically designed for their individual retirement needs. From the plaintiffs' perspective, they did not pay for a general survey or academic enrichment course. Instead, as fifty and sixty year old employees anticipating early retirements

or layoffs and lump sum distributions of retirement funds, they sought and paid to receive sound, personal advice and counseling from a qualified, reliable expert suitable to their individual financial and retirement situations. Thus, the plaintiffs' complaint is based on Dinehart/FEND's false, deceptive representations of the quality and character of the retirement workshop and its counselor, as well as Turner's fraudulent conduct. Consquently, the false, misleading and deceptive practices of each Dinehart/FEND and Turner were a producing cause that contributed to each plaintiff's grievous loss of his life's savings in retirement assets and missed opportunity to acquire what he earnestly sought, a soundly planned, structured, and funded retirement program fitting his personal and family needs. Accordingly, the plaintiffs have stated a valid claim under the DTPA as consumers who relied on the false, misleading and deceptive practices of the defendant, which were a producing cause of their severe loss and harm.

## D. Texas Securities Act

I agree that the district court's dismissal of the plaintiffs' claims under the Texas Securities Act should be affirmed. The plaintiffs allege that Turner violated the Texas Securities Act (TSA), TEX. REV. CIV. STAT. art. 581-19(C)(6) by conducting a fee-based investment advisory business through which he recommended and purchased unregistered securities, and violated TEX. REV. CIV. STAT. art. 581-33(A)(1) and (2) by selling improperly registered securities by use of untrue statements of material facts and fraudulent omissions. They allege that Dinehart/FEND materially

- 31 -

aided and abetted Turner's TSA violations by acting in reckless disregard of the law in failing to conduct a review of Turner's licenses, registrations, and disciplinary record before representing to plaintiffs that he was a retirement planning specialist; promoting services they knew or should have known were illegal and likely to cause harm or loss to the plaintiffs; recklessly failing to conduct an investigation of the applicable licensing rules in Texas and Turner's failure to comply with them; failing to disclose that Turner was not legally authorized to conduct a fee-based investment advisory business in Texas; and failing to disclose Turner's outside business activities and private transactions in securities.

TEX. REV. CIV. STAT. art. 581-33 F(2) imposes joint and several liability on any person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security. *See Morris*, 981 S.W.2d at 675. For aider liability to attach, Turner as the seller had to be liable for a violation of the TSA and Dinehart/FEND had to have been aware of the violation but had to have recklessly disregarded the fact of the violations. *See id.*

The plaintiffs have not alleged any facts from which it reasonably may be found or inferred that Dinehart/FEND was aware of the alleged illegal securities transactions between Turner and the plaintiffs. The complaint alleges that after attending a three week workshop conducted by Turner beginning on September 29, 1992, Engle transferred to Turner for investment $25,000 on September 20, 1993,

- 32 -

$100,000 in 1994, rolled over $45,000 from a mutual fund to Turner on July 24, 1995, and rolled over $50,000 from a Schwab account to securities offered by Turner in October 1996. The complaint alleges that after attending a three week workshop conducted by Turner beginning on January 29, 1992, Garbarino and his wife turned over to Turner unspecified sums in April and July of 1992, $77,476 in October 1993, $50,000 on November 14, 1995, and $35,000 on July 5, 1996 and September 10, 1996. The complaint does not allege that any of Turner's alleged TSA violations occurred during the three week workshops, that any agency or other relationship between Dinehart/FEND and Turner continued after the workshops, or that any particular fact or event tends to show that Dinehart/FEND was aware of or recklessly disregarded Turner's alleged TSA violations.

### III. CONCLUSION

For the reasons assigned, I concur in affirming the district court's dismissal of the plaintiffs' Texas Securities Act claims, but I respectfully dissent from the majority's affirmance of the dismissal of the plaintiffs' other claims.