BAPTIST MEMORIAL HOSPITAL
SYSTEM, Petitioner,

v.

Rhea SAMPSON, Respondent.

No. 97–0268.

Supreme Court of Texas.

Argued Dec. 2, 1997.

Decided May 21, 1998.

Rehearing Overruled July 3, 1998.

Ruth G. Malinas, George F. Evans, Jr., San Antonio, for Petitioner.

Oliver S. Heard, Jr., Luis R. Vera, Jr., Clifton F. Douglass, III, Karl E. Hays, San Antonio, for Respondent.

PHILLIPS, Chief Justice, delivered the opinion of the Court.

In this case, we decide whether the plaintiff raised a genuine issue of material fact that defendant Hospital was vicariously liable under the theory of ostensible agency for an emergency room physician's negligence. We granted Baptist Memorial Hospital System's application for writ of error to resolve a conflict in the holdings of our courts of appeals regarding the elements required to establish liability against a hospital for the acts of an independent contractor emergency room physician. We hold that the plaintiff has not met her burden to raise a fact issue on each element of this theory. Accordingly, we reverse the judgment of the court of appeals, 940 S.W.2d 128, and render judgment that the plaintiff take nothing.

## I

On March 23, 1990, Rhea Sampson was bitten on the arm by an unidentified creature that was later identified as a brown recluse spider. By that evening, her arm was swollen and painful, and a friend took her to the Southeast Baptist Hospital emergency room. Dr. Susan Howle, an emergency room physician, examined Sampson, diagnosed an allergic reaction, administered Benadryl and a shot of painkiller, prescribed medication for pain and swelling, and sent her home. Her condition grew worse, and she returned to the Hospital's emergency room by ambulance a little over a day later. This time Dr. Mark Zakula, another emergency room physician, treated her. He administered additional pain medication and released her with instructions to continue the treatment Dr. Howle prescribed. About fourteen hours later, with her condition rapidly deteriorating, Sampson went to another hospital and was admitted to the intensive care ward in septic shock. There, her bite was diagnosed as that of a brown recluse spider, and the proper treatment was administered to save her life. Sampson allegedly continues to have recurrent pain and sensitivity where she was

bitten, respiratory difficulties, and extensive scarring.

Sampson sued Drs. Howle and Zakula for medical malpractice. She also sued Baptist Memorial Hospital System ("BMHS"), of which Southeast Baptist Hospital is a member, for negligence in failing to properly diagnose and treat her, failing to properly instruct medical personnel in the diagnosis and treatment of brown recluse spider bites, failing to maintain policies regarding review of diagnoses, and in credentialing Dr. Zakula. Sampson also alleged that the Hospital was vicariously liable for Dr. Zakula's alleged negligence under an ostensible agency theory. Sampson nonsuited Dr. Howle early in the discovery process. The trial court granted BMHS summary judgment on Sampson's claims of vicarious liability and negligent treatment. The trial court severed those claims from her negligent credentialing claim against BMHS and her malpractice claim against Dr. Zakula.[1] Sampson appealed only on the vicarious liability theory.

■ Both parties agree that BMHS established as a matter of law that Dr. Zakula was not its agent or employee. Thus the burden shifted to Sampson to raise a fact issue on each element of her ostensible agency theory, which Texas courts have held to be in the nature of an affirmative defense. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); *Smith v. Baptist Mem'l Hosp. Sys.*, 720 S.W.2d 618, 622 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.), *disapproved on other grounds by St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 509 n. 1 (Tex.1997). Sampson contended that she raised a material fact issue on whether Dr. Zakula was BMHS's ostensible agent. The court of appeals, with one justice dissenting,

agreed and reversed the summary judgment. 940 S.W.2d 128. In our review, we must first determine the proper elements of ostensible agency, then decide whether Sampson raised a genuine issue of material fact on each of these elements.

## II

■ Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong. *See DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex.1995); RESTATEMENT (SECOND) OF AGENCY § 219 (1958). The most frequently proffered justification for imposing such liability is that the principal or employer has the right to control the means and methods of the agent or employee's work. *See Newspapers, Inc. v. Love*, 380 S.W.2d 582, 585–86 (Tex.1964); RESTATEMENT (SECOND) OF AGENCY § 220, cmt. d. Because an independent contractor has sole control over the means and methods of the work to be accomplished, however, the individual or entity that hires the independent contractor is generally not vicariously liable for the tort or negligence of that person. *See Enserch Corp. v. Parker*, 794 S.W.2d 2, 6 (Tex.1990); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985). Nevertheless, an individual or entity may act in a manner that makes it liable for the conduct of one who is not its agent at all or who, although an agent, has acted outside the scope of his or her authority. Liability may be imposed in this manner under the doctrine of ostensible agency in circumstances when the principal's conduct should equitably prevent it from denying the existence of an agency.[2]

1. Sampson subsequently nonsuited her negligent credentialing claim against BMHS.

2. Many courts use the terms ostensible agency, apparent agency, apparent authority, and agency by estoppel interchangeably. As a practical matter, there is no distinction among them. *See, e.g., Birmingham–Jefferson County Transit Auth. v. Arvan*, 669 So.2d 825, 830–31 (Ala.1995), (Cook, J., dissenting from overruling of application for rehearing); *State of Fla. Dep't of Transp. v. Heckman*, 644 So.2d 527, 529 (Fla.Dist.Ct.App.1994); *Kissun v. Humana, Inc.*, 267 Ga. 419, 479 S.E.2d

751, 752 (1997); *O'Banner v. McDonald's Corp.*, 173 Ill.2d 208, 218 Ill.Dec. 910, 670 N.E.2d 632, 634 (1996); *Deal v. North Carolina State Univ.*, 114 N.C.App. 643, 442 S.E.2d 360, 362 (1994); *Hill v. St. Claire's Hosp.*, 67 N.Y.2d 72, 499 N.Y.S.2d 904, 490 N.E.2d 823, 827 (1986); *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 680 N.E.2d 161, 174 (Ohio Ct.App.1996); *Luddington v. Bodenvest Ltd.*, 855 P.2d 204, 209 (Utah 1993); *Hamilton v. Natrona County Educ. Ass'n*, 901 P.2d 381, 386 (Wyo.1995). *But see Guillot v. Blue Cross of La.*, 690 So.2d 91, 99 (La.Ct.App.1997) (Saunders, J., concurring and

See, e.g., Marble Falls Hous. Auth. v. McKinley, 474 S.W.2d 292, 294 (Tex.Civ. App.—Austin 1971, writ ref'd n.r.e.). Ostensible agency in Texas is based on the notion of estoppel, that is, a representation by the principal causing justifiable reliance and resulting harm. See Ames v. Great S. Bank, 672 S.W.2d 447, 450 (Tex.1984); RESTATEMENT (SECOND) OF AGENCY § 267; KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 105, at 733–34 (5 th ed.1984).

■ Texas courts have applied these basic agency concepts to many kinds of principals, including hospitals. See Sparger v. Worley Hosp., Inc., 547 S.W.2d 582, 585 (Tex.1977) (explaining that "[h]ospitals are subject to the principles of agency law which apply to others"). A hospital is ordinarily not liable for the negligence of a physician who is an independent contractor. See, e.g., Berel v. HCA Health Servs., 881 S.W.2d 21, 23 (Tex.App.—Houston [1 st Dist.] 1994, writ denied); Jeffcoat v. Phillips, 534 S.W.2d 168, 172 (Tex.Civ.App.—Houston [14 th Dist.] 1976, writ ref'd n.r.e.). On the other hand, a hospital may be vicariously liable for the medical malpractice of independent contractor physicians when plaintiffs can establish the elements of ostensible agency. See, e.g., Lopez v. Central Plains Reg'l Hosp., 859 S.W.2d 600, 605 (Tex.App.—Amarillo 1993, no writ), disapproved on other grounds by Agbor, 952 S.W.2d at 509 n. 1; Nicholson v. Mem'l Hosp. Sys., 722 S.W.2d 746, 750 (Tex. App.—Houston [14 th Dist.] 1986, writ ref'd n.r.e.).

### III

■ In this case, the court of appeals held that two distinct theories of vicarious liability with different elements are available in Texas to impose liability on a hospital for emergency room physician negligence: agency by estoppel (referred to in this opinion as ostensible agency), based on the Restatement (Second) of Agency section 267, and apparent agency, based on the Restatement (Second) of Torts section 429. See 940 S.W.2d at 131. Under section 267, the party asserting ostensible agency must demonstrate that (1) the principal, by its conduct, (2) caused him or her to reasonably believe that the putative agent was an employee or agent of the principal, and (3) that he or she justifiably relied on the appearance of agency. RESTATEMENT (SECOND) OF AGENCY § 267 (1958). Although neither party mentioned section 429 in the trial court or in their briefs to the court of appeals, the court of appeals then proceeded to adopt section 429 and hold that under that section, plaintiff had only to raise a fact issue on two elements: (1) the patient looked to the hospital, rather than the individual physician, for treatment; and (2) the hospital held out the physician as its employee. See 940 S.W.2d at 132. Holding that the plaintiff had established a genuine issue of material fact on each element of this latter affirmative defense, the court reversed and remanded to the trial court for trial on the merits. The court of appeals further suggested that a hospital could do nothing to avoid holding out a physician in its emergency room as its employee because notification to prospective patients in any form would be ineffectual:

> [W]e take an additional step in our analysis to consider whether notice provided in consent forms and posted in emergency rooms can ever be sufficient to negate a hospital's "holding out". . . .
>
> . . . .
>
> . . . Because we do not believe hospitals should be allowed to avoid such responsibility, we encourage the full leap—imposing a nondelegable duty on hospitals for the negligence of emergency room physicians.

940 S.W.2d at 135–136. Thus, the court of appeals would create a nondelegable duty on

dissenting) (stating apparent authority is based on contract law, whereas agency by estoppel is grounded in tort principles); Houghland v. Grant, 119 N.M. 422, 891 P.2d 563, 568 (1995)(recognizing that although ostensible agency and agency by estoppel are based on slightly different rationales, the theories have been used interchangeably). See also McWilliams & Russell, *Hospital Liability for Torts of Independent Contractor Physicians*, 47 S.C. L. REV. 431, 445–452 (1996). Regardless of the term used, the purpose of the doctrine is to prevent injustice and protect those who have been misled. See Roberts v. Haltom City, 543 S.W.2d 75, 80 (Tex. 1976).

a hospital solely because it opens its doors for business.

■ We first reject the court of appeals' conclusion that there are two methods, one "more difficult to prove" than the other, to establish the liability of a hospital for the malpractice of an emergency room physician. 940 S.W.2d at 132. Our courts have uniformly required proof of all three elements of section 267 to invoke the fiction that one should be responsible for the acts of another who is not in fact an agent acting within his or her scope of authority. As we have explained:

> Apparent authority in Texas is based on estoppel. It may arise either from a principal knowingly permitting an agent to hold herself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority she purports to exercise. . . .
>
> A prerequisite to a proper finding of apparent authority is evidence of conduct by the principal relied upon by the party asserting the estoppel defense which would lead a reasonably prudent person to believe an agent had authority to so act.

*Ames v. Great S. Bank,* 672 S.W.2d at 450; *see also, e.g., Douglass v. Panama, Inc.,* 504 S.W.2d 776, 778–79 (Tex.1974); *Chastain v. Cooper & Reed,* 152 Tex. 322, 257 S.W.2d 422, 427 (1953). Thus, to establish a hospital's liability for an independent contractor's medical malpractice based on ostensible agency, a plaintiff must show that (1) he or she had a reasonable belief that the physician was the agent or employee of the hospital, (2) such belief was generated by the hospital affirmatively holding out the physician as its agent or employee or knowingly permitting the physician to hold herself out as the hospital's agent or employee, and (3) he or she justifiably relied on the representation of authority. *See, e.g., Drennan v. Community Health Inv. Corp.,* 905 S.W.2d 811, 820 (Tex. App.—Amarillo 1995, writ denied); *Lopez,* 859 S.W.2d at 605; *Nicholson,* 722 S.W.2d at 750. While a few courts of appeals have referred to section 429, it has never before

been adopted in this state by any appellate court. *See Smith,* 822 S.W.2d at 72–73 (mentioning Restatement (Second) of Torts section 429 as additional support, but recognizing that the applicable rule is provided by Restatement (Second) of Agency section 267); *Byrd v. Skyline Equip. Co.,* 792 S.W.2d 195, 197 (Tex.App.—Austin 1990), *writ denied per curiam,* 808 S.W.2d 463 (Tex.1991) (citing section 429 as an additional reason summary judgment in the case was improper); *Brownsville Med. Ctr. v. Gracia,* 704 S.W.2d 68, 74 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (after stating that section 267 provides the applicable rule, mentions section 429 as additional authority). To the extent that the Restatement (Second) of Torts section 429 proposes a conflicting standard for establishing liability, we expressly decline to adopt it in Texas.

■ Next, we reject the suggestion of the court of appeals quoted above that we disregard the traditional rules and take "the full leap" of imposing a nondelegable duty on Texas hospitals for the malpractice of emergency room physicians. 940 S.W.2d at 136. Imposing such a duty is not necessary to safeguard patients in hospital emergency rooms. A patient injured by a physician's malpractice is not without a remedy. The injured patient ordinarily has a cause of action against the negligent physician, and may retain a direct cause of action against the hospital if the hospital was negligent in the performance of a duty owed directly to the patient. *See, e.g., Diaz v. Westphal,* 941 S.W.2d 96, 98 (Tex.1997); *Medical & Surgical Mem'l Hosp. v. Cauthorn,* 229 S.W.2d 932, 934 (Tex.Civ.App.—El Paso 1949, writ ref'd n.r.e.).

## IV

■ We now examine the record below in light of the appropriate standard. The Hospital may be held liable for the negligence of Dr. Zakula if Sampson can demonstrate that (1) she held a reasonable belief that Dr. Zakula was an employee or agent of the Hospital, (2) her belief was generated by some conduct on the part of the Hospital, and (3) she justifiably relied on the appearance that Dr. Zakula was an agent or em-

ployee of the Hospital. *See, e.g., Drennan,* 905 S.W.2d at 820.

As summary judgment evidence, BMHS offered the affidavit of Dr. Potyka, an emergency room physician, which established that the emergency room doctors are not the actual agents, servants, or employees of the Hospital, and are not subject to the supervision, management, direction, or control of the Hospital when treating patients. Dr. Potyka further stated that when Dr. Zakula treated Sampson, signs were posted in the emergency room notifying patients that the emergency room physicians were independent contractors. Dr. Potyka's affidavit also established that the Hospital did not collect any fees for emergency room physician services and that the physicians billed the patients directly. BMHS presented copies of signed consent forms as additional summary judgment evidence. During both of Sampson's visits to the Hospital emergency room, before being examined or treated, Sampson signed a "Consent for Diagnosis, Treatment and Hospital Care" form explaining that all physicians at the Hospital are independent contractors who exercise their own professional judgment without control by the Hospital. The consent forms read in part:

> I acknowledge and agree that . . ., Southeast Baptist Hospital, . . . and any Hospital operated as a part of Baptist Memorial Hospital System, is not responsible for the judgment or conduct of any physician who treats or provides a professional service to me, but rather each physician is an independent contractor who is self-employed and is not the agent, servant or employee of the hospital.

To establish her claim of ostensible agency, Sampson offered her own affidavits. In her original affidavit, she stated that although the Hospital directed her to sign several pieces of paper before she was examined, she did not read them and no one explained their contents to her. Her supplemental affidavit stated that she did not recall signing the documents and that she did not, at any time during her visit to the emergency room, see any signs stating that the doctors who work in the emergency room are not employees of the Hospital. Both affidavits state that she did not choose which doctor would treat her and that, at all times, she believed that a

physician employed by the hospital was treating her. Based on this record we must determine if Sampson produced sufficient summary judgment evidence to raise a genuine issue of material fact on each element of ostensible agency, thereby defeating BMHS's summary judgment motion.

Even if Sampson's belief that Dr. Zakula was a hospital employee were reasonable, that belief, as we have seen, must be based on or generated by some conduct on the part of the Hospital. "No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts." *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (1952). The summary judgment proof establishes that the Hospital took no affirmative act to make actual or prospective patients think the emergency room physicians were its agents or employees, and did not fail to take reasonable efforts to disabuse them of such a notion. As a matter of law, on this record, no conduct by the Hospital would lead a reasonable patient to believe that the treating emergency room physicians were hospital employees.

Sampson has failed to raise a fact issue on at least one essential element of her claim. Accordingly, we reverse the judgment of the court of appeals and render judgment that Sampson take nothing.