In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-441 CV


____________________



TRACI JACKSON and MIKE JACKSON, 


INDIVIDUALLY and as NEXT FRIEND of R.D.J., a minor, Appellants



V.



CHCA CONROE, L.P. d/b/a CONROE REGIONAL MEDICAL CENTER,


and CONROE HOSPITAL CORPORATION, 


AS GENERAL PARTNER OF CHCA CONROE, L.P. 


d/b/a CONROE REGIONAL MEDICAL CENTER, Appellees






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 05-10-09411-CV






MEMORANDUM OPINION


 Appellants Traci Jackson and Mike Jackson, individually and as next friends of
R.D.J., a minor, (collectively the Jacksons) appeal a summary judgment granted in favor of
appellees CHCA Conroe, L.P. d/b/a Conroe Regional Medical Center and Conroe Hospital
Corporation (collectively the Hospital). The Jacksons' first issue asserts the trial court erred
in granting summary judgment because material issues of fact existed as to whether the
Hospital was vicariously liable for the alleged negligence of Drs. Gerald Bullock and Crystal
Broussard in the delivery of the Jacksons' child on the theories of express and/or ostensible
agency. In their second issue, the Jacksons assert the Hospital was responsible for the
alleged negligence of the physicians because the Hospital and Conroe Medical Education
Foundation ("the Foundation") were engaged in a joint enterprise. Appellants next two
issues concern their ability to recover individually for damages for past and future mental
anguish and for loss of services and earnings on behalf of their child. We hold the Hospital
is not vicariously liable for the alleged negligence of Drs. Bullock and Broussard and was
not engaged in a joint enterprise with the Foundation. We affirm.

 The Jacksons sued the Hospital, Drs. Gerald Bullock and Crystal Broussard, and the
Foundation for Drs. Bullock's and Broussard's alleged negligent use of a vacuum extractor
during the delivery of the Jacksons' child. The Hospital is affiliated with the Foundation, a
nonprofit corporation that operates family practice residency training and education
programs. The Hospital provides the Foundation's residents with education and training. 
Dr. Bullock was employed as a clinical faculty member of the Foundation and was called to
the Hospital to care for Traci as a high-risk obstetrical consultant. Dr. Broussard was a
resident intern with the Foundation and was under Dr. Bullock's supervision during Dr.
Broussard's treatment of Traci and the delivery of the child. 

 Appellants contended, inter alia, that the Hospital was vicariously liable for the
alleged negligence of Drs. Bullock and Broussard under the theories of actual agency,
ostensible agency, and joint enterprise. The Hospital moved for traditional summary
judgment and asserted that Drs. Bullock and Broussard were not the Hospital's employees
but were independent contractors for whom the Hospital had no liability. The Hospital
challenged the Jacksons' ostensible agency claim asserting appellants did not have a
reasonable belief that Drs. Bullock and Broussard were agents or employees of the Hospital
and the Hospital did not affirmatively hold out the physicians as its agents. The Hospital
further asserted the Jacksons failed to satisfy the elements of their joint enterprise claim. The
trial court granted the summary judgment and severed the Jacksons' claims against the
Hospital from the claims against the remaining defendants. The Jacksons bring this appeal. 
 We review the trial court's grant of summary judgment de novo. Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing the trial court's
grant of a traditional motion for summary judgment, we must determine whether the movant
carried its burden to establish that there existed no genuine issue of material fact and that it
was entitled to judgment as a matter of law. Shah v. Moss, 67 S.W.3d 836, 842 (Tex. 2001). 
A defendant moving for summary judgment must disprove at least one essential element of
a plaintiff's cause of action or establish all elements of an affirmative defense. Am. Tobacco
Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). We assume all evidence favorable
to the nonmovant is true and indulge every reasonable inference in favor of the nonmovant,
resolving any doubts in its favor. Id. Once the movant produces evidence entitling it to
summary judgment, the burden shifts to the nonmovant to present evidence that raises a fact
issue. Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996).

 In their first issue, the Jacksons allege the residency program affiliation agreement
between the Hospital and the Foundation created an express agency relationship between the
Hospital and Drs. Bullock and Broussard. Generally, a hospital is not liable for the
negligence of a physician who is an independent contractor. Baptist Mem'l Hosp. Sys. v.
Sampson, 969 S.W.2d 945, 948 (Tex. 1998). To determine whether a worker is an
independent contractor, we consider whether the employer has the right to control the
progress, details, and methods of operations of the work. Limestone Prods. Distrib., Inc. v.
McNamara, 71 S.W.3d 308, 312 (Tex. 2002). "The employer controls not merely the end
sought to be accomplished, but also the means and details of its accomplishment." Id. 

 Examples of the type of control normally exercised by an employer include
when and where to begin and stop work, the regularity of hours, the amount
of time spent on particular aspects of the work, the tools and appliances used
to perform the work, and the physical method or manner of accomplishing the
end result.


Thompson v. Travelers Indem. Co. of R.I., 789 S.W.2d 277, 278-79 (Tex. 1990).

 Appellants claim that certain provisions of the residency agreement evidences the
Hospital's right to control "the actions of . . . [the] Foundation and the actions of the resident
physicians." For instance, the Jacksons argue, the Foundation has the right to control the
educational goals of the residents, the removal of the residents from the program, and the
reinstatement of a resident who had been previously removed. Appellants further assert that
the agreement allows the Hospital and the Foundation to agree on the number of first year
residents to participate in the residency program. The Foundation, the appellants argue, also
provides the residents with office space, supplies, and furnishings. Finally, the agreement
allows the Hospital "to bill for all Hospital and other institutional or institutionally related
services associated with the Residency Program, including the services provided by
Foundation hereunder in connection with the Residency Program." 

 The particular provisions of the residency program cited by the Jacksons do not
evidence the Foundation's right to control the progress, details, and methods of operation of
the work performed by the resident physicians. We first note that the agreement itself
establishes that Drs. Bullock and Broussard, as employees of the Foundation, are not the
Hospital's employees, but are independent contract physicians. The contract provision
entitled "Independent Contractors" provides the following: 

 Independent Contractors. The parties hereto acknowledge and agree that the
relationship created between Foundation and CRMC [CHCA Conroe, L.P.,
d/b/a Conroe Regional Medical Center] is strictly that of independent business
persons operating at arm's length, and that Foundation is an independent
contractor with respect to the personnel, management, and administrative
services described in this Agreement. Nothing contained herein shall be
construed as creating a partnership or joint venture or any other type of
relationship between the parties other than one of independent contractors. 
CRMC shall neither have nor exercise any control or direction over the method
by which Foundation shall perform its services hereunder. It is expressly
agreed by the parties hereto that no work, act, commission or omission of
Foundation pursuant to the terms and conditions of this Agreement shall be
construed to make or render Foundation the agent, employee or servant of
CRMC. Each party hereto (the "indemnifying party") shall be responsible for
all salaries, taxes, and pension plan structure, contributions and benefits, if
any, with respect to all personnel employed or contracted by said party, and
shall indemnify the other party from any loss, cost, liability or expense
resulting from any claim by any such employee or contractor of the
indemnifying party against the other party with respect to any such salaries,
taxes, pension structure or contributions and/or other similar benefits of any
kind.[ (1)] 


 The agreement also provides that "[e]very resident in the Residency Program shall
be contracted by the Foundation and shall not be considered a CRMC [CHCA Conroe, L.P.,
d/b/a Conroe Regional Medical Center] employee nor entitled to such benefits and privileges
that are granted to a CRMC employee." The faculty physicians "have the capacity and ability
to train and educate residents and otherwise participate in the Residency Program to the
satisfaction of the Foundation" and are "required to maintain active clinical privileges on,
and remain in good standing with, the medical staff of the Hospital." 

 A review of the entire agreement indicates that the Foundation and its employees, and
not the Hospital, have the right to control the progress, details, and methods of operations of
the work. The Foundation determines the call schedule for residents working in the Hospital. 
The agreement states that the Hospital "shall neither have nor exercise any control or
direction over the method by which Foundation shall perform its services hereunder." The
faculty physicians employed by the Foundation are responsible for coordinating the activities
and training the residents "in the examination and treatment of patients at the Hospital." 
During the child's delivery, Dr. Broussard, as a resident intern, was under the direct 
supervision of Dr. Bullock, a faculty physician of the Foundation. Dr. Bullock was in control
of the physical method and manner of accomplishing the child's delivery. Dr. Bullock
testified that he made the decision to use the vacuum extractor to aid in the delivery of the
Jacksons' child. Both physicians testified that Bullock applied the vacuum extractor to the
child's head and he assisted Broussard in pulling the vacuum while it was on the child's
head. The Jacksons did not present any other summary judgment evidence in response to that
submitted by the Hospital to contradict the express terms of the residency program
agreement. Thus, a review of the residency agreement and the summary judgment evidence
submitted by the Hospital indicates that Drs. Bullock and Broussard were independent
contractors and not Hospital employees. The Jacksons have failed to raise a fact issue on
their express agency theory.

 Alternatively, the Jacksons contend Drs. Bullock and Broussard are the Hospital's
ostensible agents. A hospital may be vicariously liable for the negligence of an independent
contractor physician when plaintiffs can establish the elements of ostensible agency. 
Sampson, 969 S.W.2d at 948. To establish a hospital's liability for an independent contractor
physician's alleged medical malpractice based on ostensible agency, (1) the plaintiff must
have a reasonable belief that the physician was the agent or employee of the hospital; (2) the
belief must be generated by the hospital affirmatively holding out the physician as its agent
or employee or knowingly permitting the physician to hold herself out as the hospital's agent
or employee; and (3) the plaintiff must justifiably rely on the representation of authority. Id.
at 949.

 According to Traci's affidavit and deposition testimony, she did not know that Drs.
Bullock and Broussard were not the Hospital's employees at the time of delivery because she
was given no information regarding the doctors' employment status. She further indicated
that no one with the Hospital represented to her that Drs. Bullock and Broussard were the
Hospital's employees. Traci testified that because the Hospital did not tell her the doctors
were not its employees, she believed they were. In his deposition, Mike testified that he
believed Drs. Bullock and Broussard were employees of the Hospital because he "was never
told otherwise." His belief was also based on the fact that Dr. Bullock's jacket had the name
"Conroe" on it but did not recall the exact wording on the jacket. While Appellants seem to
rely upon the name of the hospital being included on the name badge of Dr. Broussard,
neither appellant testified by deposition or affidavit that they saw or otherwise relied upon
any identification name tag of Dr. Broussard and therefore, such evidence is inconsequential
to establish the first prong of ostensible agency (the reasonable belief that the physician was
the agent or employee of the Hospital). Even if the Jacksons believed that Drs. Bullock and
Broussard were employees of the Hospital, those beliefs must be based on or generated by
some conduct on the part of the Hospital in order to establish ostensible agency. See id. at
950. Traci's and Mike's deposition testimony and Traci's affidavit reveal that the Jacksons'
beliefs that Drs. Bullock and Broussard were employees or agents of the hospital were not
generated by the Hospital affirmatively holding out the physicians as its agents or employees. 
See id. In fact, their beliefs were based on the fact that the Hospital did not tell the Jacksons
that the doctors were not its employees. Thus, the appellants have failed to satisfy the first
two elements required to establish ostensible agency. Issue one is overruled. 

 The Jacksons' second issue alleges a joint enterprise relationship between the Hospital
and the Foundation. (2) The theory of joint enterprise makes each party to the enterprise the
agent of the other whereby each party is held responsible for the negligent act of the other. 
Tex. Dep't of Transp. v. Able, 35 S.W.3d 608, 613 (Tex. 2000). The elements of a joint
enterprise are "'(1) an agreement, express or implied, among the members of the group; (2)
a common purpose to be carried out by the group; (3) a community of pecuniary interest in
that purpose, among the members; and (4) an equal right to voice in the direction of the
enterprise, which gives an equal right of control.'" Id. (quoting Shoemaker v. Whistler's
Estate, 513 S.W.2d 10, 16-17 (Tex. 1974)).

 The first element is satisfied because the Hospital and the Foundation entered into the
residency affiliation agreement. A review of the agreement indicates a common purpose to
provide family practice physician services to the community through the use of the Hospital's
education and training services to the Foundation's resident and faculty physicians. Thus,
the first two elements have been satisfied. 

 Appellants argue that the third element, a community of pecuniary interest in that
common purpose, is satisfied because the faculty physicians and residents provide family
practice services to the Hospital's patients; the faculty physicians and the Hospital bill for
their respective fees and services; the Hospital bills for services provided by the Foundation;
and the Foundation assists the Hospital in complying with Medicare laws regarding the
Hospital's reimbursement of resident costs and services. However, the Supreme Court, in
deciding a similar issue, has explained that there must be a monetary interest common among
the members of the group, and this monetary benefit must be "'shared without special or
distinguishing characteristics.'" St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 531 (Tex. 2002)
(quoting Ely v. Gen. Motors Corp., 927 S.W.2d 774, 779 (Tex. App.--Texarkana 1996, writ
denied)). In other words, the existence of monetary benefits that flow from the affiliated
program are not enough to satisfy this element if these benefits are not shared "among the
members without special or distinguishing characteristics. . . ." Id. at 532. 

 A review of the agreement indicates there is no agreement between the Hospital and
the Foundation to share any monetary benefits without special or distinguishing
characteristics. The Hospital is not responsible for any costs or expenses of the residency
program. The Hospital and the faculty physicians bill separately for their respective fees and
charges. Neither the Hospital nor the faculty physicians are permitted to "bill or have any
claim or interest in or to the amounts billed by the other party." Thus, the agreement
expressly provides that the income generated from these fees and charges are not shared
among the members of the group. The agreement further provides that the "Foundation shall
not bill in the name of the residents for patient care services furnished by the residents" and
allows the Foundation to be reimbursed for resident costs and services. However, the
agreement does not provide that the Hospital and the Foundation will share any of these
reimbursed funds. See id. at 532. Appellants have failed to present a material issue of fact
regarding the community of pecuniary interest element. Thus, the third element of joint
enterprise has not been satisfied. Issue two is overruled. The judgment is affirmed. (3) 

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice


Submitted on March 2, 2006

Opinion Delivered December 14, 2006



Before McKeithen, C.J., Kreger and Horton, JJ.
1. Appellants acknowledge that the agreement states that the parties are independent
contractors, but contend that when other provisions of an agreement indicate a principal
and agent relationship, the "spirit and the essence" of the entire contract must be reviewed
to determine what type of relationship exists. According to appellants, the "spirit and
essence" of the agreement reveals the Hospital and the Foundation have an agency and
principal relationship. 
2. The Jacksons asserted the joint enterprise theory for the first time in their third
amended petition. The petition was filed on the same day they filed their response to the
motion for summary judgment but well after the date established by the trial court in the
court's second amended scheduling order for jury trial. The Hospital raised an objection
to the amended petition and on appeal asserts that the joint enterprise theory should not
have been considered by the trial court because the petition was untimely. The record
does not show that the trial court ruled on the Hospital's objection. However, the
Hospital moved broadly for summary judgment with respect to appellants' vicarious
liability allegations and claims of ostensible agency. We find that the appellants' joint
enterprise claim was properly before the court because the judgment states the trial court
considered all the pleadings on file. See Goswami v. Metro. Sav. & Loan Ass'n, 751
S.W.2d 487, 490 (Tex. 1988). 
3. Because we hold that the Hospital is not vicariously liable for the alleged
negligence of Drs. Bullock and Broussard, we need not address the Jacksons' third and
fourth issues concerning damages.