# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00601-CV

**Austin Regional Clinic, P.A. and Steve Wilkins, M.D., Appellants**

**v.**

**Sean Power, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-11–000881, HONORABLE TIM SULAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Austin Regional Clinic, P.A. ("ARC") and Steve Wilkins, M.D., bring this interlocutory appeal challenging the trial court's denial of their motion to dismiss appellee Sean Power's health care liability claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2011). Power brought direct liability claims against ARC and Wilkins, as well as vicarious liability claims against ARC. After Power served an expert report, ARC and Wilkins objected to the report and moved to dismiss. *See id*. § 74.351(b) (West 2011). The trial court denied their motion to dismiss and granted Power a thirty-day extension to cure deficiencies in the expert report. *See id*. § 74.351(c) (West 2011).

In five issues, appellants contend that the expert who authored the report was not qualified to give an opinion on the applicable standards of care and on causation, and they challenge the report itself as to the direct liability claims against ARC. Appellants contend that the "expert

report at issue is the legal equivalent of 'no report'" as to those claims. *See Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011). Alternatively, they contend that Power judicially abandoned his direct liability claims against ARC during the hearing on appellants' motion to dismiss.

For the reasons that follow, we dismiss this appeal for want of jurisdiction to the extent appellants challenge the trial court's denial of their motion to dismiss Power's claims based upon the qualifications of the expert report's author. We reverse the trial court's order, however, to the extent the trial court denied appellants' motion to dismiss the direct liability claims against ARC. We remand the case to the trial court with instructions to dismiss the direct liability claims against ARC and to consider ARC's request for attorney's fees and costs pursuant to section 74.351(b) of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).[1]

## BACKGROUND

On February 22, 2009, Wilkins, who is a physician, treated Power at an ARC after-hour clinic for a wrist injury. Power did not receive additional treatment for his injury until late March 2009. At that time, he saw an orthopedic surgeon who diagnosed a wrist fracture and, approximately one month later, performed surgery to treat the fracture.

Power filed suit in March 2011 against ARC and Wilkins, as well as the orthopedic surgeon and other defendants, asserting health care liability claims arising from the care and

---

[1] Also pending before the Court is appellants' opposed motion to deem appellants' recited facts as true, for rebriefing by Power, and to strike exhibits. We grant the motion to the extent it requests this Court to disregard evidence that was not before the trial court. *See Cantu v. Horany*, 195 S.W.3d 867, 870 (Tex. App.—Dallas 2006, no pet.) (appellate courts generally cannot consider documents that are not properly included in record). We deny all other requests in the motion.

2

treatment of his wrist injury.[2] *See id*. § 74.001(a)(13) (West Supp. 2011) (defining "health care liability claim").  As to ARC and Wilkins, Power alleged that they were negligent by failing to properly diagnose, inform, or treat his injury.

Within 120 days of filing suit, Power served appellants with an expert report, along with the authoring expert's curriculum vitae. *See id*. § 74.351(a) (West 2011).  The expert, a board certified orthopedic surgeon, identified Wilkins as the physician who initially saw and treated Power at ARC.  The expert noted that Wilkins obtained x-rays of Power's left wrist and stated "no acute changes seen."  The expert addressed the standard of care and summarized his conclusions, stating in relevant part:

> In any case the standard of care would be prompt follow-up by a family physician or orthopedic surgeon.  The patient should be notified that he/she needs follow-up evaluation.  Furthermore the standard of care would dictate that the radiologist read these films within 24-48 hours and notify a treating physician of the presence of a fracture.  Standard of care would indicate that this fracture should have been immobilized promptly after injury which would most likely have resulted in fracture healing without surgical intervention and possible complications of surgery.
>
> * * *
>
> There was a delay in diagnosis which resulted in a delay of appropriate treatment (immobilization).  This resulted in a surgical intervention.  Early intervention (prompt immobilization after injury) would probably have avoided the need for surgery.

---

[2] The orthopedic surgeon is one of the defendants in the underlying suit.  The surgeon did not challenge the expert report at issue and is not a party to this appeal.

The expert's curriculum vitae shows that he began practicing medicine in 1973 and continued to do so at the time he prepared the expert report. His practice experience included emergency medicine from 1973 to 1977 and then orthopedic surgery after 1977.

Wilkins and ARC filed objections to the expert report and sought dismissal under section 74.351 of the civil practice and remedies code. *See id*. § 74.351(b). They urged that the report was so deficient that Power had failed to serve an expert report at all within the 120-day deadline and, therefore, that Power's claims against them should be dismissed. Their objections to the report included challenges to its author's qualifications. *See id.* §§ 74.401 (qualification of expert witness in suit against physician), .402 (qualification of expert witness in suit against health care provider), .403 (qualification of expert witness on causation) (West 2011). They also challenged the adequacy of the report itself, contending that the report failed "to address the required elements of standard of care, breach and causation in the manner statutorily and judicially required." They objected to the "speculative opinions" in the report and the report's "failure to identify [Wilkins] by name and correlate each of the report elements to each of [his] alleged acts or omissions."

The trial court held a hearing on appellants' objections and motion to dismiss. At the hearing, the trial court did not consider additional expert reports that Power served on appellants after the 120-day deadline for serving expert reports. *See id*. § 74.351(a). The trial court also did not consider appellants' supplemental objections and motion to dismiss as to the additional expert reports. After the hearing, the trial court denied appellants' motion to dismiss as to the expert report served within the 120-day deadline and granted Power a thirty-day extension to cure deficiencies in the

4

report. *See id*. § 74.351(c). Appellants' supplemental objections and motion to dismiss as to the additional expert reports remain pending with the trial court. This appeal followed.

## ANALYSIS

Under chapter 74 of the civil practice and remedies code, a claimant asserting health care liability claims is required as a threshold matter to serve an expert report with a curriculum vitae by the 120th day after the original petition is filed for each physician named in the suit. *See id*. § 74.351(a). Section 74.351(r)(6) defines an expert report as follows:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id*. § 74.351(r)(6). The expert report is not meant for the trier of fact. *See id.* § 74.351(k) (expert report generally not admissible and parties may not refer to it "during the course of the action for any purpose"). Its purpose is "to deter frivolous claims." *Scoresby*, 346 S.W.3d at 554. "The report is intended to inform the defendant of the specific conduct that the claimant has called into question and provide a basis for the trial court to conclude that the claims have merit." *Fung v. Fischer*, __ S.W.3d __, No. 03-10-00298-CV, 2012 Tex. App. LEXIS 2956, at *10 (Tex. App.—Austin Apr. 13, 2012, no pet.) (citations omitted).

A defendant whose conduct is implicated in an expert report may file objections to the report's sufficiency. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). A trial court, however, should not grant a motion challenging the adequacy of an expert report unless "it appears to the court,

5

after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(*l*). When a report is served within the 120-day deadline but found by the trial court to be deficient, the trial court may grant one thirty-day extension to cure deficiencies in the report. *Id.* § 74.351(c).

When a trial court "denies all or part of the relief sought by a motion under Section 74.351(b)," the defendant physician or health care provider may bring an interlocutory appeal from the order. *Id.* § 51.014(a)(9). But appellate courts lack jurisdiction over an interlocutory appeal of the denial of a motion to dismiss when a claimant timely serves a "deficient" report—as opposed to "no report"—and the trial court grants a thirty-day extension. *Scoresby*, 346 S.W.3d at 555; *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (interlocutory appeal "may not be taken from an order granting an extension under Section 74.351"). The supreme court has recognized the logic and practicality of prohibiting an appeal when the trial court has granted a thirty-day extension:

> This prohibition is both logical and practical. . . . If a defendant could immediately (and prematurely) appeal, the court of appeals would address the report's sufficiency while its deficiencies were presumably being cured at the trial court level, an illogical and wasteful result. Moreover, because the Legislature authorized a single, thirty-day extension for deficient reports, health care providers face only a minimal delay before a report's sufficiency may again be challenged and the case dismissed, if warranted.

*Ogletree v. Matthews*, 262 S.W.3d 316, 321 (Tex. 2007).

We review a trial court's ruling on a motion to dismiss brought under section 74.351(b) for an abuse of discretion. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or when it acts

without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003). With this background, we turn to appellants' issues.

### Qualifications of Expert Report's Author

In their first, second, and fourth issues, appellants challenge the qualifications of the expert report's author, contending that he was not qualified to give an opinion on the standard of care applicable to Wilkins or ARC or on causation as to ARC and, therefore, that the trial court abused its discretion by denying their motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.401–.403.

Appellants urge that this Court should begin its analysis with the statutory provisions addressing qualification of expert witnesses, *see id.*, and Texas common law addressing when physicians from different medical fields are qualified to testify against one another in medical malpractice cases. *See Broders v. Heise*, 924 S.W.2d 148, 152–53 (Tex. 1996) (noting that "there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question"). Against this backdrop, they urge that Power's "expert, a board certified specialist, does not have the required knowledge, training, experience or education required to give an opinion critical of a more generalized family practice physician or of a health care provider whose facilities and staffing are alleged to be inadequate for treating a medical condition such as [Power]'s."

The supreme court's analysis in *Scoresby* informs our decision here. Similar to the procedural posture in this case, the defendant surgeons appealed the trial court's denial of their motion to dismiss brought under section 74.351. *Scoresby*, 346 S.W.3d at 551. The plaintiff filed an expert

7

report within the 120-day deadline, but the defendant surgeons objected to the report and argued in their motion that it "was too inadequate to qualify as an expert report." *Id.* Among the objections that they made, the defendant surgeons asserted that the expert, who was a neurologist, "[was] not qualified to testify regarding the standard of care for an ENT surgeon in performing the procedures" at issue. *Id*. The trial court denied their motion and granted a thirty-day extension to cure deficiencies in the expert report. *Id*. While the appeal was pending, the defendant surgeons objected to an amended report filed by the plaintiff after the 120-day deadline and moved again for dismissal with the trial court. *Id*. at 552. The objections and motion to dismiss as to the amended report remained pending with the trial court during the appeal. *Id*.

In that case, the supreme court affirmed the court of appeal's decision that dismissed the interlocutory appeal for want of jurisdiction. *Id*. at 558. Upholding the trial court's order, the supreme court concluded that "[a]ll deficiencies, whether in the expert's opinions or qualifications, are subject to being cured before an appeal may be taken from the trial court's refusal to dismiss the case." *Id*. at 557. The court explained:

> An individual's lack of relevant qualifications and an opinion's inadequacies are deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so. This lenient standard avoids the expense and delay of multiple interlocutory appeals and assures a claimant a fair opportunity to demonstrate that his claim is not frivolous.

*Id.* at 549.

Focusing on the Act's goal of deterring frivolous claims, the supreme court directed trial courts to "be lenient in granting thirty day extensions" and to grant an extension "if deficiencies

8

in an expert report can be cured within the thirty-day period." *Id.* at 554; *see id.* at 556 ("An inadequate expert report does not indicate a frivolous claim if the report's deficiencies are readily curable."). The supreme court also set forth the "minimal" standard for granting a thirty-day extension: that a trial court may grant an extension "if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Id*. at 557.

Applying this standard here, the expert report at issue was filed within the 120-day deadline and implicated the conduct of Wilkins. Appellants also do not dispute that Wilkins was ARC's agent acting within the course and scope of his employment while he was treating Power. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998) ("Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong." (citations omitted)). The only remaining inquiry then is whether the expert report's author was an "individual with expertise" that Power's claims have merit. *See Scoresby*, 346 S.W.3d at 557.

The trial court would not have abused its discretion by concluding that a board certified orthopedic surgeon with nearly forty years of experience, including practicing emergency medicine, was an "individual with expertise" to opine about the merit of claims arising from the alleged failure to diagnose and treat a bone fracture. *See id*. Following the supreme court's directive in *Scoresby*, we conclude that the trial court did not abuse its discretion by denying appellants' motion to dismiss to the extent the motion was based upon the qualifications of the expert report's author.

9

Given that the trial court granted a thirty-day extension, we also conclude that we do not have jurisdiction to further consider appellants' issues challenging the author's qualifications. *Id*. (declining to express its "view on the adequacy of [the expert]'s qualifications; the trial court did not specifically address the matter" and concluding that "premature . . . to consider it"); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (interlocutory appeal from thirty-day extension not allowed); *Seastruck v. Meza*, No. 04-10-00840-CV, 2011 Tex. App. LEXIS 6193, at *8–9 (Tex. App.—San Antonio Aug. 10, 2011, no pet.) (mem. op.) (dismissing for want of jurisdiction appeal of trial court's denial of motion to dismiss and grant of a thirty-day extension to cure because expert reports "merely deficient as opposed to 'no reports' for which a thirty-day extension was not available").[3]

### Direct Liability Claims Against ARC

In their third and fifth issues, appellants challenge the trial court's refusal to dismiss Power's direct liability claims against ARC. They contend that Power judicially abandoned his direct liability claims against ARC during the hearing before the trial court on their motion or, alternatively, that the trial court abused its discretion by denying their motion to dismiss because the "expert report at issue is the legal equivalent of 'no report'" as to the direct liability claims against ARC.

---

[3] Appellants argue in their brief that the adequacy of the expert's qualifications was "precisely the question that [the trial court] was asked to rule upon" and, therefore, that the question is ripe for this Court's review. Although appellants argued at the hearing before the trial court and in their motion that the expert was not qualified, they also argued that the report itself was "inadequate/no report," and the trial court did not express its opinion as to the adequacy of the report or the expert's qualifications at the hearing and its order does not state the basis for its ruling.

This Court addressed the issue of direct versus vicarious liability claims asserted against health care providers in *Fung*. __ S.W.3d at __, 2012 Tex. App. LEXIS 2956, at *32–38. In that case, we found that the expert report at issue was adequate as to the vicarious liability claims asserted against the health care provider but that the trial court should have dismissed the direct liability claims against the provider because the report failed to address those claims. *Id*. at *37–38. In reaching our conclusion, we noted that the facts required to establish a health care provider's vicarious liability, "i.e., the acts of [the physician and the physician]'s relationship" to the health care provider, differ from the facts required to establish the health care provider's direct liability, "i.e., [the provider]'s provision of particular policies and procedures." *Id*. at *30. We further explained:

> Under the doctrine of respondeat superior, an employer or principal may be vicariously liable for the tortious acts of an employee or agent acting within the scope of the employment or agency, even though the principal or employer has not personally committed a wrong. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541–42 (Tex. 2002) (citing *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)). If a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient. *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 67–72 (Tex. 2008).
>
> . . . .
>
> The converse implication of *Gardner* is that if a party's alleged health care liability is not "purely vicarious" but direct, then a report that implicates only the actions of that party's agents or employees is insufficient to that extent. *Cf. Gardner*, 274 S.W.3d at 671–72.

*Id*. at *30–31; *see also Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002) ("[T]he report must include the required information within its four corners.").

11

Similar to the expert report that was before this Court in *Fung*, the expert report here does not address direct liability claims against ARC. We, therefore, conclude that the trial court abused its discretion by denying appellants' motion to dismiss the direct liability claims against ARC. *Fung*, __ S.W.3d at __, 2012 Tex. App. LEXIS 2959, at \*37–38; *but see Certified EMS, Inc. v. Potts*, 355 S.W.3d 683, 685, 694 (Tex. App.—Houston [1st Dist.] 2011, pet. granted) (reaching contrary conclusion and noting that supreme court "has not directly decided whether expert report must set out each and every liability theory within a cause of action"). We sustain appellants' fifth issue.[4]

CONCLUSION

Because we conclude that the trial court abused its discretion by denying appellants' motion to dismiss the direct liability claims against ARC, we reverse the trial court's order as to those claims and remand the case to the trial court with instructions to dismiss those claims and to consider ARC's request for attorney's fees and costs.[5] We otherwise dismiss this appeal for want of jurisdiction.

---

[4] Because we have sustained appellants' fifth issue, we need not address their third issue, alternatively arguing that Power abandoned the direct liability claims against ARC at the hearing on appellants' motion to dismiss. *See* Tex. R. App. P. 47.1. We note that Power's attorney at oral argument before this Court conceded that Power had abandoned his direct liability claims against ARC. *See In re C.C.J.*, 244 S.W.3d 911, 921 (Tex. App.—Dallas 2008, no pet.) ("A party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact entered of record, so as to show that the matters therein were not tried." (citing Tex. R. Civ. P. 165)). When questioned by the trial court during the hearing on the motion to dismiss if there was some other basis to name ARC other than vicarious liability, Power's attorney stated:

> Your Honor, I will concede that in that report, no, there's nothing else as to ARC. We will be moving forward strictly with vicarious liability under respondeat superior.

[5] Those attorney's fees would be limited to those fees pertaining to pre-dismissal direct liability only.

12

_____

Melissa Goodwin, Justice

Before Justices Puryear, Henson and Goodwin

Reversed and Remanded in part; Dismissed in part

Filed:   June 28, 2012